**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | |
|---|---|
| MICROMETL CORP., <br>         Plaintiff. | Case No.:  1:08-cv-0321-LJM-WTL |
| vs. | U.S. District Judge Larry J. McKinney |
| TRANZACT TECHNOLOGIES, INC., <br>         Defendant. | Magistrate Judge William T. Lawrence |

### DEFENDANT'S MOTION TO DISMISS/TRANSFER FOR IMPROPER VENUE PURSUANT TO RULE 12(b)(3) AND/OR 28 U.C.S.A. § 1406

NOW COMES Defendant, TRANZACT TECHNOLOGIES, INC. (hereinafter, "Defendant"), by and through its attorneys, SCOPELITIS, GARVIN, LIGHT, HANSON & FEARY and SULLIVAN HINCKS & CONWAY, and respectfully moves this Court to dismiss, or in the interest of justice transfer, this matter for improper venue, pursuant to Federal Rule 12(b)(3) and/or 28 U.S.C. §1406.  In support of said Motion, Defendant states as follows:

1.      On February 25, 2008, Plaintiff, MICROMETL CORP. (hereinafter, "Plaintiff"), filed this matter in the Marion County Circuit Court located in Marion County, Indiana, in Cause No. 49D10-08-02-PL-0009473.  (A copy of Plaintiff's Complaint is attached hereto and incorporated herein as Exhibit "1").

2.      On March 10, 2008, Defendant properly removed this matter to this Court on the basis of diversity jurisdiction.  (A copy of Defendant's Notice of Removal is attached hereto and incorporated herein as Exhibit "2").

3.      Plaintiff's case is based on alleged "overbilling" by Defendant under the parties' shipper services agreement.  Plaintiff only attaches a portion of that agreement as an exhibit to its state court Complaint.  (Ex. 1)  That portion expressly incorporates additional provisions and

"standard principles" of the agreement, available via a secure link on TranzAct's web site, that "govern both [parties'] commitments."  (Ex. 1, "Exhibit A," ¶¶ 2-3).

4.    The online "standard principles" of the parties' agreement, incorporated by reference in the portion cited by Plaintiff, contain the "Freedom Logistics Network 21st Century Shipper Transportation Agreement." (See Declaration of Michael A. Ragan, attached hereto and incorporated herein as Ex. 3,  4-6, and "Exhibit A" attached thereto).

5.    Article XV of the "Freedom Logistics Network 21st Century Shipper Transportation Agreement" is entitled "Controlling Law," and reads as follows:

The applicable laws and venues to the Agreement are as follows:

A.---The parties specifically agree that this Agreement shall be construed and enforced in accordance with the laws of the State of Illinois except where Federal law is applicable.

B.---The parties **mutually consent and submit to the jurisdiction and venue of the Federal and/or State courts located in Cook or DuPage Counties, Illinois and any action or suit concerning this Agreement or related matter shall only be brought by the parties in these Federal or State courts** with appropriate subject matter jurisdiction therein.

C.---The parties mutually acknowledge and agree that they shall not raise in connection therewith, and hereby waive, any defenses based upon venue, inconvenience of forum, lack of jurisdiction in any action or suit brought in accordance with the foregoing.

(Ex. 3, "Exhibit A")(emphasis added).

6.    Defendant requests the Court to dismiss the Complaint because the agreement between the parties contains an exclusive forum selection clause that requires all actions and lawsuits concerning the agreement to be brought in the Federal or State Courts located in Cook or DuPage Counties, Illinois.  Despite this forum selection clause, Plaintiff erroneously filed its Complaint in Marion County, Indiana.

7.    Alternatively, Defendant requests the Court to transfer the case to the United States District Court for the Northern District of Illinois, Eastern Division pursuant to 28 U.S.C § 1406.

8.    Defendant submits a Memorandum of Law and Declaration of Michael A. Regan in support of this Motion.

WHEREFORE, Defendant TRANZACT TECHNOLOGIES, INC., prays that this action be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(3) and/or 28 U.S.C. §1406, or, if the Court deems that the interests of justice so require, that the action be transferred to the proper venue located in the United States District Court for the Northern District of Illinois, Eastern Division, and for any other such relief that the Court finds just and appropriate.

Respectfully Submitted,

TRANZACT TECHNOLOGIES, INC.


By: /s/ Ryan A. Mahoney
    One of Its Attorneys

Thomas E. Schulte
SCOPELITIS, GARVIN, LIGHT, HANSON & FEARY
10 West Market Street
Suite 1500
Indianapolis, IN 46204
(317) 492-9274 ph
(317) 687-2414 fax
        and

Daniel C. Sullivan (*pro hac vice*)
Ryan A. Mahoney (*pro hac vice*)
SULLIVAN, HICKS & CONWAY
120 West 22nd Street, Ste. 100
Oak Brook, IL 60523
(630) 573-5021 ph
(630) 573-5130 fax
ATTORNEYS FOR DEFENDANT

## CERTIFICATE OF SERVICE

I hereby certify that on the 28th day of March, 2008, a copy of the foregoing was filed electronically. Parties may access this filing through the Court's system. OPTION: (Parties may access this filing through the Court's system.)

Thomas E. Schulte
tschulte@scopelitis.com

Douglas Robert Brown
dbrown@silegal.com

Thomas W. Blessing
tblessing@silegal.com, dedmondson@silegal.com

/s/ Ryan A. Mahoney
Ryan A. Mahoney


SULLIVAN, HICKS & CONWAY
120 West 22nd Street, Ste. 100
Oak Brook, IL 60523
(630) 573-5021 ph
(630) 573-5130 fax

STATE OF INDIANA          )          IN THE MARION COUNTY COURT
                          )SS:
COUNTY OF MARION          )          CAUSE NO.:


MICROMETL CORP.,                    )
                                    )          49D10 08 02 PL 009475
          Plaintiff,                )
                                    )
     v.                             )          **FILED**
                                    )
TRANZACT TECHNOLOGIES, INC.,        )          FEB 25 2008          201
                                    )
          Defendant.                )
                                    )          *Elizabeth f. White*
                        **COMPLAINT**          CLERK OF THE MARION CIRCUIT COURT

Plaintiff, Micrometl Corporation ("Micrometl"), by counsel and for its Complaint against

Defendant, Tranzact Technologies, Inc. ("Tranzact") alleges:

1.     In 2003, Micrometl and Tranzact entered into a written shipper services

agreement ("contract").   A true and accurate copy of the contract is attached hereto and

incorporated by reference herein as Exhibit A.

2.     Pursuant to the contract, Tranzact agreed to manage freight shipping for

Micrometl and to audit Micrometl's shipping expenses.

3.     Pursuant to Micrometl's agreement with one of its customers, Carrier Corporation

("Carrier"), all shipping expenses associated with products sold by Micrometl to Carrier were

billed to and paid by Carrier.

4.     Shipping expenses associated with Micrometl's sales to other customers were

billed to and paid by Micrometl.

5.     Tranzact had actual or constructive knowledge of these practices.

6.     In November 2005, Tranzact unilaterally and without prior notice began billing

Micrometl for shipping expenses associated with products sold by Micrometl to Carrier.

**EXHIBIT 1**

7.    Tranzact has also overbilled Micrometl for Yellow Freight charges in an undetermined amount.

8.    Tranzact has overbilled Micrometl in excess of $100,000.

9.    Said overbillings are inconsistent with the parties' prior course of dealing.

10.    Tranzact breached the contract without excuse or justification and Micrometl has sustained damages as a proximate result of said breach.

11.    In December 2006, Micrometl notified Tranzact, in writing, of the overbillings and requested that they be corrected. However, Tranzact has failed and refused to correct the overbillings.

12.    Micrometl has made written demand upon Tranzact for payment, but Tranzact refuses to pay.

WHEREFORE, Plaintiff, Micrometl Corporation, by counsel, respectfully requests judgment in its favor and against Defendant, for damages in an amount sufficient to compensate Plaintiff for its losses, for interest, costs of this action and all other relief reasonable in the premises.

Respectfully submitted,

STEWART & IRWIN, P.C.

Douglas R. Brown, #4215-49
Thomas W. Blessing, #15696-49
*Attorneys for Plaintiff Micrometl*

STEWART & IRWIN, P. C.
251 E. Ohio Street, Suite 1100
Indianapolis, IN 46204
Telephone: (317)639-5454
Facsimile: (317)632-1319

SI-165178_1

2

 

## FREEDOM LOGISTICS NETWORK
## 21ST CENTURY SHIPPER
## GLOBAL TRANSPORTATION SERVICES AGREEMENT

The Freedom Logistics Network (FLN) is a unique service division of Tranzact Technologies, Inc. FLN has developed beneficial solutions and supporting technologies for you as a user of transportation/logistic services. We have contracted transportation/logistic services for you based upon a volume of shipments provided by other shippers that is standardized through our FREEDOM 2020 © and 2021 © Rate System.

The principles for the FLN that are a part of our service offerings are contained in their entirety in our FREEDOM LOGISTICS NETWORK 21ST CENTURY SHIPPER TRANSPORTATION SERVICES, which can be found at a secure link on our web site which we will provide to you before you partner with us. These written principles are what govern both our commitments and we want them readily available at all times so you can access them for your understanding and use.

In addition to providing you with pricing contained within and discounted off of the FREEDOM 2020 © and 2021 © for use in selecting transportation/logistic services which are available in the FLN under our contracts, Tranzact will facilitate your logistics processes with transportation payment, audit services and management reports. These services are subject to standard principles that are on the secure link on our web site. These rules govern both of our commitments that arise from our signatures implementing your membership in the Freedom Logistics Network.

We have made a sizable investment in the system, which we license for your use. This is important to us because the value of the FLN is the integrity of the system. Please note in the rules that you cannot sell or license our system in any way, including brokering transportation through our system, or using our system, particularly FREEDOM 2020 © and 2021 © or discounts, after you terminate your membership in the FLN.

We will implement your membership in the FLN immediately after receiving your endorsement. As shown in the principles, this commitment will be for a five- (5) year period and will automatically renew for additional two- (2) year periods unless you notify us at least sixty- (60) days prior to expiration of any period.

All contact information, passwords and other information will be given to you as the person authorized by your company to sign this membership commitment (unless you designate another individual).

**MEMBERSHIP ELECTION:**

MEMBER SHIPPER:
MICROMETL
An Indiana Corporation
3035 N. Shadeland Ave., Suite 300
Indianapolis, IN 46226

By: Gerald Holman
Title: Vice President, C.F.O.
Tel. No.: 317/524-5414   Fax No.: 317/543-5986

By: MARK WEBBER
Title: V.P., Mfg
TEl.No: 317-524-5418

FREEDOM LOGISTICS NETWORK
TRANZACT TECHNOLOGIES, INC.,
An Illinois Corporation
360 W. Butterfield Road, Suite 400
Elmhurst, IL 60126

By: Jean H. Regan
Title: President, Tranzact Technologies, Inc.
Tel. No: 630/833-0890   Fax No: 630/833-0346

**EXHIBIT A**





# SCHEDULE I

## SOFTWARE, RATES, CHARGES, PAYMENT OPTIONS

1.        FREEDOM 2020© and FREEDOM 2021© rates applicable to you as a Member Shipper can be found on the FLN Internet Website and are available to you effective as of the start date indicated on this contract. The rates are a part of this Agreement. As Member Carriers are added or deleted from the network, you will be notified by the FLN Logistics Group, and the FLN Internet Website will be updated accordingly. The applicable rates will be those that appear on the most current version of the FLN Internet Website.

2.        FLN invoices will be paid by Tranzact Technologies, Inc. All Shipments moving via the FLN will be invoiced on a weekly basis. All invoices to be paid by Tranzact should be forwarded to:

TRANZACT TECHNOLOGIES, INC.
360 W. Butterfield Road, Suite 400
Elmhurst, IL 60126

3.        **FLN Services** - FLN will provide the following services as a part of your FLN membership:
a.  Audits for overcharges and duplicate payments will be included in the payments for all designated shipments transported by a Member Carrier or non-member carrier.
b.  FLN will supply the following Monthly Management Reports:
1.   Carrier Summary Corporate
2.   Carrier Summary By Division
3.   Lane Summary
c.  Invoices from Parcel carriers will be paid at the manifest level only
d.  StarRate (Software) web site for rating of Freedom shipments
e.  StarLite Reporting System (Software) - License for Member Shipper use on-site: Prices quoted upon request
f.  StarRate Software Integration with Internal Systems (Software) - License for Member Shipper use in house: Prices quoted upon request
g.  Inbound Management Reporting System Software: Prices quoted upon request
h.  On-Site Logistics Support: Prices quoted upon request
i.  Flat file of FREEDOM 2020 © and 2021 © Less Than Truckload rates – prices quoted upon request
j.  Custom Software design – prices quoted upon request

4.        **Tranzact Technologies will conduct a post audit of freight charges** paid to carriers for shipments made up to 120-150 days prior to the effective date of this agreement. The exact time frame for including bills in the post audit depends upon the length of time needed to provide Tranzact the actual freight bills themselves as well as the pertinent rates, discounts and charges used in the post audit itself. In return for conducting the post audit, Tranzact will retain 40% of all monies recovered from overcharges related to the incorrect application of rates, discounts, rules or charges including duplicate billings

5.        **Initial Investment\*** .................................................. $ 1,500
\*Includes start-up expenses to bring Member Shipper on-line to FLN

6.        **Monthly Investment\*\*** .................................................. $ 1,000
\*\*The monthly investment for participation in the FLN:

7.    All Member Shipper charges will be processed by Tranzact Technologies, Inc. weekly. The procedure will be as follows:
a. Weekly pay periods end on a scheduled day each week.
b. All Freight invoices will be received on a daily basis.
c. Freight invoices will be entered into the system within a reasonable period after receipt.
d. The day prior to receipt of funds due, Member Shipper will be notified via facsimile transmission or e-mail of total dollars due to satisfy payment obligations for that week.
e. Member Shipper will fund Tranzact Technologies (ACH or wire transfer) for weekly payment obligation no later than 5 p.m. on the next business day. If this payment obligation is not met by the next business day at 5 p.m., Member Shipper will be assessed a $200 late payment fee to be included in the next week's payment.

| PAYMENT OPTIONS | RECEIVING FUNDING INFORMATION |
|---|---|
| Client or Tranzact Initiated ACH: | Receive weekly by e-mail: |
| No Charge | No Charge |
| All other forms of payment: | Receive weekly by fax: |
| $50.00 per month administration fee | $25.00 per month administration fee |

f. If Member Shipper chooses not to fund via wire transfer or ACH, Member Shipper must provide Tranzact Technologies with the equivalent of four- (4) weeks' funds based upon an average of the prior 4 weeks experience or, if there is an insufficient period, then based upon an estimate by Tranzact Technologies.
g. Payment to the Member Carriers will be released to each Member Carrier via check once collected funds are received.
h. Member Shipper will be billed monthly for membership fees (manual, wire transfer or ACH).

8.    **Amendments Due to Volume**
If the average number of bills paid per month over a three-month period exceeds 1100, the monthly investment may be adjusted. The adjusted investment will not exceed $1 per bill.

This Schedule I issued on _July 31_, 2003

and becomes effective _Aug. 18_, 2003

MEMBER SHIPPER:
*MICROMETL*
*An Indiana Corporation*

Initials: _____
NAME: Gerald Holman
TITLE: CFO

_Mark Webber_
_V.P., Mfg_

FREEDOM LOGISTICS NETWORK
*TRANZACT TECHNOLOGIES, INC.*
*An Illinois Corporation*

Initials: _____
*Jean H. Regan*
*President*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

FILED
US DISTRICT COURT
08 MAR 11  PM 2: 36

SOUTHERN DISTRICT
OF INDIANA
LAURA A. BRIGGS
CLERK

|  |  |
|---|---|
| MICROMETL CORP.,<br>Plaintiff. |  |
| vs. | Case No.:_____ |
| TRANZACT TECHNOLOGIES, INC.,<br>Defendant. | Judge:_____<br>**1: 08-cv- 0321 -LJM -WTL** |

**NOTICE OF REMOVAL**
**(28 U.C.S.A. § 1441)**

Defendant, TRANZACT TECHNOLOGIES, INC. (hereinafter, "Defendant"), files this Notice of Removal pursuant to 28 U.S.C. § 1446(a).

**A. Introduction**

1. On February 25, 2008, Plaintiff, MICROMETL CORP. (hereinafter, "Plaintiff"), filed suit in the Marion County Court located in Marion County, Indiana, in Cause No. 49D10 08 02 PL 0009473. (A copy of Plaintiff's Complaint is attached hereto as part of Exhibit "1," containing all of the pleadings, process, orders and other filings served upon the Defendant in the state court action).

2. In the aforementioned suit, Plaintiff alleges that the Defendant "overbilled" Plaintiff for costs associated with the execution of the parties' shipper services agreement. Plaintiff alleges that the "overbilled" amount totals in excess of $100,000. (Ex. 1, Complaint, ¶ 8).

3. Plaintiff attached a "true and accurate" copy of a portion of the parties' shipper services agreement as an exhibit to its state court Complaint. That agreement identifies Plaintiff as "an Indiana corporation" and identifies Defendant as "an Illinois corporation." The contract also identifies Plaintiff's principal place of business as Indianapolis, Indiana, and Defendant's principal place of business as Elmhurst, Illinois. (Ex. 1, Complaint - Exhibit A).

# EXHIBIT 2

4. By Plaintiff's own admissions, contained in its allegations and exhibits to its Complaint, this suit constitutes a civil action where the matter in controversy exceeds $75,000, exclusive of interest and costs, and is between citizens of different States.

### B. Basis for Removal

5. Removal is proper because the United States District Courts have original jurisdiction over all civil actions where the matter in controversy exceeds $75,000, exclusive of interest and costs, and is between citizens of different States. 28 U.S.C. §§ 1332, 1441(a).

6. For purposes of removal only, venue is proper in this district under 28 U.S.C. § 1441 (a) because this district and division embrace the place where the removed action has been pending.

7. Removal is sought prior to the expiration of thirty (30) days of the date of service of process (March 5, 2008), pursuant to 28 U.S.C.A. § 1446(b).

8. Copies of this Notice of Removal will be served upon all parties and filed with the clerk of the state court pursuant to 28 U.S.C.A. § 1446(d).

WHEREFORE, Defendant TRANZACT TECHNOLOGIES, INC., prays that this action proceed in this Court as an action properly removed to it, and for such other and further relief at law or in equity to which it may show itself justly entitled.

Respectfully Submitted this 10th Day of March, 2008.

Respectfully submitted:

Thomas E. Schulte/#20360-49

SCOPELITIS, GARVIN, LIGHT, HANSON & FEARY
10 West Market Street, Suite 1500
Indianapolis, IN 46204
(317) 492-9274 ph
(317) 687-2414 fax

2

Daniel C. Sullivan (*pro hac vice* pending)
Ryan A. Mahoney (*pro hac vice* pending)
SULLIVAN, HINCKS & CONWAY
122 West 22nd Street, Ste. 350
Oak Brook, IL 60523
630/573-5021 (Ph)
630/573/5130 (Fax)

Attorneys For Defendant,
Tranzact Technologies, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served by United States mail, first-class postage prepaid, this 11th day of March, 2008, upon the following:

Douglas R. Brown
Thomas W. Blessing
STEWART & IRWIN, P.C.
251 East Ohio Street, Suite 1100
Indianapolis, Indiana 46204

Thomas E. Schulte

SCOPELITIS, GARVIN, LIGHT, HANSON & FEARY
10 West Market Street, Suite 1500
Indianapolis, IN 46204
(317) 492-9274 ph
(317) 687-2414 fax

4

| | | |
|---|---|---|
| STATE OF INDIANA | ) | IN THE MARION COUNTY COURT |
| | )SS: | |
| COUNTY OF MARION | ) | CAUSE NO.: |

| | |
|---|---|
| MICROMETL CORP., | ) |
| | ) 49D10 08 02 PL 0 0 9 4 7 5 |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| TRANZACT TECHNOLOGIES, INC., | ) |
| | ) |
| Defendant. | ) |

To Defendant:    TRANZACT TECHNOLOGIES, INC.
c/o Highest and Best Officer Present
360 W. Butterfield Road, Suite 400
Elmhurst, IL 60126

You are hereby notified that you have been sued by the person named as Plaintiff and in the Court indicated above.

The nature of the suit against you is stated in the complaint which is attached to this Summons. It also states the relief sought or the demand made against you by the Plaintiff.

An answer or other appropriate response in writing to the complaint must be filed either by you or your attorney within twenty (20) days, commencing the day after you receive this Summons, (or twenty-three (23) days if this Summons was received by mail), or a judgment by default my be rendered against you for the relief demanded by Plaintiff.

If you have a claim for relief against the Plaintiff arising from the same transaction or occurrence, you must assert it in your written answer.

Dated:_____          _____
*Elizabeth A. White*
Clerk, Marion Superior Court  FEB 2 9 2008  (Seal)

(The following manner of service of summons is hereby designated.)

__X__ Registered or certified mail.
_____ Service at place of employment, to-wit:
_____ Service on individual - (Personal) at above address.
_____ Service on agent. (Specify)
_____ Other service.

Thomas W. Blessing, #15696-49
STEWART & IRWIN, P.C.
Attorneys at Law
251 East Ohio Street, Suite 1100
Indianapolis, Indiana 46204-2147
317-639-5454/Fax: 317-632-1319

1

# EXHIBIT 1

## CLERK'S CERTIFICATE OF MAILING

I hereby certify that on the _____ day of _____, 2008, I mailed a copy of this Summons and a copy of the complaint to the Defendant, TranzAct Technologies, Inc., by certified mail, requesting a return receipt, at the address furnished by the Plaintiff.

Dated:_____

_____
Clerk, Marion Superior Court

## RETURN ON SERVICE OF SUMMONS BY MAIL

I hereby certify that the attached return receipt was received by me showing that the Summons and a copy of the complaint mailed to Defendant was accepted by the Defendant on the _____ day of _____, 2008.

I hereby certify that the attached return receipt was received by me showing that the Summons and a copy of the complaint was returned not accepted on the _____ day of _____, 2008.

I hereby certify that the attached return receipt was received by me showing that the Summons and a copy of the complaint mailed to the Defendant was accepted by _____ on behalf of said Defendant on the _____ day of _____, 2008.

_____
Clerk, Marion Superior Court

s1-170176_1

2

STATE OF INDIANA )
)SS:
COUNTY OF MARION )

IN THE MARION COUNTY COURT

CAUSE NO.:

MICROMETL CORP., )
)
Plaintiff, )
)
v. )
)
TRANZACT TECHNOLOGIES, INC., )
)
Defendant. )

49D10 08 02 PL 009473

**FILED**

FEB 25 2008    (201)

*Elizabeth of White*
CLERK OF THE MARION CIRCUIT COURT

## COMPLAINT

Plaintiff, Micrometl Corporation ("Micrometl"), by counsel and for its Complaint against Defendant, Tranzact Technologies, Inc. ("Tranzact") alleges:

1.     In 2003, Micrometl and Tranzact entered into a written shipper services agreement ("contract"). A true and accurate copy of the contract is attached hereto and incorporated by reference herein as Exhibit A.

2.     Pursuant to the contract, Tranzact agreed to manage freight shipping for Micrometl and to audit Micrometl's shipping expenses.

3.     Pursuant to Micrometl's agreement with one of its customers, Carrier Corporation ("Carrier"), all shipping expenses associated with products sold by Micrometl to Carrier were billed to and paid by Carrier.

4.     Shipping expenses associated with Micrometl's sales to other customers were billed to and paid by Micrometl.

5.     Tranzact had actual or constructive knowledge of these practices.

6.     In November 2005, Tranzact unilaterally and without prior notice began billing Micrometl for shipping expenses associated with products sold by Micrometl to Carrier.

7.    Tranzact has also overbilled Micrometl for Yellow Freight charges in an undetermined amount.

8.    Tranzact has overbilled Micrometl in excess of $100,000.

9.    Said overbillings are inconsistent with the parties' prior course of dealing.

10.    Tranzact breached the contract without excuse or justification and Micrometl has sustained damages as a proximate result of said breach.

11.    In December 2006, Micrometl notified Tranzact, in writing, of the overbillings and requested that they be corrected. However, Tranzact has failed and refused to correct the overbillings.

12.    Micrometl has made written demand upon Tranzact for payment, but Tranzact refuses to pay.

WHEREFORE, Plaintiff, Micrometl Corporation, by counsel, respectfully requests judgment in its favor and against Defendant, for damages in an amount sufficient to compensate Plaintiff for its losses, for interest, costs of this action and all other relief reasonable in the premises.

Respectfully submitted,

STEWART & IRWIN, P.C.

Douglas R. Brown, #4215-49
Thomas W. Blessing, #15696-49
*Attorneys for Plaintiff Micrometl*

STEWART & IRWIN, P. C.
251 E. Ohio Street, Suite 1100
Indianapolis, IN 46204
Telephone: (317)639-5454
Facsimile: (317)632-1319

SI-165178_1

2

 

## FREEDOM LOGISTICS NETWORK
## 21ST CENTURY SHIPPER
## GLOBAL TRANSPORTATION SERVICES AGREEMENT

The Freedom Logistics Network (FLN) is a unique service division of Tranzact Technologies, Inc. FLN has developed beneficial solutions and supporting technologies for you as a user of transportation/logistic services. We have contracted transportation/logistic services for you based upon a volume of shipments provided by other shippers that is standardized through our FREEDOM 2020 © and 2021 © Rate System.

The principles for the FLN that are a part of our service offerings are contained in their entirety in our FREEDOM LOGISTICS NETWORK 21ST CENTURY SHIPPER TRANSPORTATION SERVICES, which can be found at a secure link on our web site which we will provide to you before you partner with us. These written principles are what govern both our commitments and we want them readily available at all times so you can access them for your understanding and use.

In addition to providing you with pricing contained within and discounted off of the FREEDOM 2020 © and 2021 © for use in selecting transportation/logistic services which are available in the FLN under our contracts, Tranzact will facilitate your logistic processes with transportation payment, audit services and management reports. These services are subject to standard principles that are on the secure link on our web site. These rules govern both of our commitments that arise from our signatures implementing your membership in the Freedom Logistics Network.

We have made a sizable investment in the system, which we license for your use. This is important to us because the value of the FLN is the integrity of the system. Please note in the rules that you cannot sell or license our system in any way, including brokering transportation through our system, or using our system, particularly FREEDOM 2020 © and 2021 © or discounts, after you terminate your membership in the FLN.

We will implement your membership in the FLN immediately after receiving your endorsement. As shown in the principles, this commitment will be for a five- (5) year period and will automatically renew for additional two- (2) year periods unless you notify us at least sixty- (60) days prior to expiration of any period.

All contact information, passwords and other information will be given to you as the person authorized by your company to sign this membership commitment (unless you designate another individual).

MEMBERSHIP ELECTION:
MEMBER SHIPPER:
MICROMETL
An Indiana Corporation
3011 N. Shadeland Ave., Suite 300
Indianapolis, IN 46226

By: Gerald Holman
Title: Vice President, C.F.O.
Tel. No.: 317/524-5414    Fax No.: 317/543-5986

By: MARK WEBBER
TITLE: V.P., Mfg
TEL. NO: 317-524-5418

FREEDOM LOGISTICS NETWORK
TRANZACT TECHNOLOGIES, INC.,
An Illinois Corporation
360 W. Butterfield Road, Suite 400
Elmhurst, IL 60126

By: Jean H. Regan
Title: President, Tranzact Technologies, Inc.
Tel. No: 630/833-0890    Fax No: 630/833-0346

- 1 -
Tranzact Technologies, Inc. / MicroMetl
Freedom Logistics Network 21st Century Shipper Services Agreement
5/22/03

## EXHIBIT A





## SCHEDULE 1

## SOFTWARE, RATES, CHARGES, PAYMENT OPTIONS

1. FREEDOM 2020© and FREEDOM 2021© rates applicable to you as a Member Shipper can be found on the FLN Internet Website and are available to you effective as of the start date indicated on this contract. The rates are a part of this Agreement. As Member Carriers are added or deleted from the network, you will be notified by the FLN Logistics Group, and the FLN Internet Website will be updated accordingly. The applicable rates will be those that appear on the most current version of the FLN Internet Website.

2. FLN Invoices will be paid by Tranzact Technologies, Inc. All Shipments moving via the FLN will be invoiced on a weekly basis. All invoices to be paid by Tranzact should be forwarded to:

TRANZACT TECHNOLOGIES, INC.
360 W. Butterfield Road, Suite 400
Elmhurst, IL 60126

3. FLN Services - FLN will provide the following services as a part of your FLN membership:
   a. Audits for overcharges and duplicate payments will be included in the payments for all designated shipments transported by a Member Carrier or non-member carrier.
   b. FLN will supply the following Monthly Management Reports:
      1. Carrier Summary Corporate
      2. Carrier Summary By Division
      3. Late Summary
   c. Invoices from Parcel carriers will be paid at the manifest level only
   d. StarRate (Software) web site for rating of Freedom shipments
   e. StarLite Reporting System (Software) - License for Member Shipper use on-site: Prices quoted upon request
   f. StarRate Software Integration with Internal Systems (Software) - License for Member Shipper use in house; Prices quoted upon request
   g. Inbound Management Reporting System Software: Prices quoted upon request
   h. On-Site Logistics Support: Prices quoted upon request
   i. Flat file of FREEDOM 2020 © and 2021 © Less Than Truckload rates – prices quoted upon request
   j. Custom Software design – prices quoted upon request

4. Tranzact Technologies will conduct a post audit of freight charges paid to carriers for shipments made up to 120-150 days prior to the effective date of this agreement. The exact time frame for including bills in the post audit depends upon the length of time needed to provide Tranzact the actual freight bills themselves as well as the pertinent rates, discounts and charges used in the post audit itself. In return for conducting the post audit, Tranzact will retain 40% of all monies recovered from overcharges related to the incorrect application of rates, discounts, rules or charges including duplicate billings

5. Initial Investment* ...........................................$ 1,500
*Includes start-up expenses to bring Member Shipper on-line to FLN

6. Monthly Investment** ........................................$ 1,000
**The monthly investment for participation in the FLN:

7.    All Member Shipper charges will be processed by Tranzact Technologies, Inc. weekly.  The procedure will be as follows:

a.    Weekly pay periods end on a scheduled day each week.
b.    All Freight invoices will be received on a daily basis.
c.    Freight invoices will be entered into the system within a reasonable period after receipt.
d.    The day prior to receipt of funds due, Member Shipper will be notified via facsimile transmission or e-mail of total dollars due to satisfy payment obligations for that week.
e.    Member Shipper will fund Tranzact Technologies (ACH or wire transfer) for weekly payment obligation no later than 5 p.m. on the next business day.  If this payment obligation is not met by the next business day at 5 p.m., Member Shipper will be assessed a $200 late payment fee to be included in the next week's payment.

| PAYMENT OPTIONS | RECEIVING FUNDING INFORMATION |
|---|---|
| Client or Tranzact initiated ACH: | Receive weekly by e-mail: |
| No Charge | No Charge |
| | |
| All other forms of payment | Receive weekly by fax: |
| $50.00 per month administration fee | $25.00 per month administration fee |

f.    If Member Shipper chooses not to fund via wire transfer or ACH, Member Shipper must provide Tranzact Technologies with the equivalent of four (4) weeks' funds based upon an average of the prior 4 weeks' experience or, if there is an insufficient period, then based upon an estimate by Tranzact Technologies.
g.    Payment to the Member Carriers will be released to each Member Carrier via check once collected funds are received.
h.    Member Shipper will be billed monthly for membership fees (manual, wire transfer or ACH).

8.    Amendments Due to Volume
If the average number of bills paid per month over a three-month period exceeds 1100, the monthly investment may be adjusted.  The adjusted investment will not exceed $1 per bill.

This Schedule I issued on JULY 31, 2003

and becomes effective AUG 18, 2003

MEMBER SHIPPER:
MICROMETL
An Indiana Corporation

Initials: _____
NAME: Gerald Holman
TITLE: CFO

Mnek Webber
V.P., Mfg.

FREEDOM LOGISTICS NETWORK
TRANZACT TECHNOLOGIES, INC.
An Illinois Corporation

Initials: _____
Jean H. Regan
President

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| MICROMETL CORP.,<br>      Plaintiff. | ⁞ | Case No.:  1:08-cv-0321-LJM-WTL |
| vs. | ⁞ | U.S. District Judge Larry J. McKinney |
| TRANZACT TECHNOLOGIES, INC.,<br>      Defendant. | ⁞ | Magistrate Judge William T. Lawrence |

## DECLARATION OF MICHAEL A. REGAN

I, MICHAEL A. REGAN, pursuant to 28 USC § 1746, do hereby declare under penalty of perjury that the following statement is true and correct and if called upon to testify, my testimony would be as follows:

1.      I am of legal age and under no legal disability to testify in the above-captioned proceeding, and the following declarations are made upon my own personal knowledge.

2.      I am the CEO of Tranzact Technologies, Inc. d/b/a "Freedom Logistics®" ("Tranzact") and, in that capacity, I am authorized to submit this Declaration on behalf of Tranzact.

3.      On or about May 22, 2003, Jean H. Regan, President of Tranzact, and Gerald Holman, Vice-President and C.F.O. of Micrometl Corp., signed the "Freedom Logistics Network 21st Century Shipper Global Transportation Services Agreement" (hereinafter, "the Agreement"), a true and correct copy of which is attached hereto as Exhibit "A".

4.      The signature page of the "Freedom Logistics Network 21st Century Shipper Global Transportation Services Agreement" specifically states, in part:

> The principles for the [Freedom Logistics Network] that are a part of [Tranzact's] service offerings are contained in their entirety in our FREEDOM LOGISTICS NETWORK 21ST CENTURY SHIPPER TRANSPORTATION SERVICES, which can be found at a secure link on our web site which we will provide to you

# EXHIBIT 3

before you partner with us. These written principles are what govern both our commitments and we want them readily available at all times so you can access them for your understanding and use. (Ex. A).

5.    From before Gerald Holman signed the signature page of the "Freedom Logistics Network 21st Century Shipper Global Transportation Services Agreement" through the present, all of the written principles contained in the FREEDOM LOGISTICS NETWORK 21ST CENTURY SHIPPER TRANSPORTATION SERVICES have been available on TranzAct's web site.

6.    One of the principles contained in the FREEDOM LOGISTICS NETWORK 21ST CENTURY SHIPPER TRANSPORTATION SERVICES and agreed to by and between the parties was an agreement between Tranzact and Micrometl concerning "[t]he applicable laws and venues to the Agreement…"

7.    Specifically, Article XV of the principles contained in the FREEDOM LOGISTICS NETWORK 21ST CENTURY SHIPPER TRANSPORTATION SERVICES agreed to by and between the parties states as follows:

A.---The parties specifically agree that this Agreement shall be construed and enforced in accordance with the laws of the State of Illinois except where Federal law is applicable.

B.---The parties mutually consent and submit to the jurisdiction and venue of the Federal and/or State courts located in Cook or DuPage Counties, Illinois and any action or suit concerning this Agreement or related matter shall only be brought by the parties in these Federal or State court with appropriate subject matter jurisdiction therein.

C.---The parties mutually acknowledge and agree that they shall not raise in connection therewith, and hereby waive, any defenses based upon venue, inconvenience of forum, lack of jurisdiction in any action or suit brought in accordance with the foregoing. (Ex. A, Art. XV).

8.    It has always been the intention of the parties to limit the venue of any dispute arising from the Agreement to the applicable Federal and/or State courts located in Cook or DuPage Counties.

9.    The copy of the parties' Agreement attached hereto as Exhibit 1 consists of records that are maintained in the regular course of Tranzact's business activity.

I declare under penalty of perjury that the foregoing is true and correct. Executed on this 27 of MARCH , 2008:

_____
Michael Regan





# FREEDOM LOGISTICS NETWORK
## 21ST CENTURY SHIPPER
## GLOBAL TRANSPORTATION SERVICES AGREEMENT

The Freedom Logistics Network (FLN) is a unique service division of Tranzact Technologies, Inc. FLN has developed beneficial solutions and supporting technologies for you as a user of transportation/logistic services. We have contracted transportation/logistic services for you based upon a volume of shipments provided by other shippers that is standardized through our **FREEDOM 2020 © and 2021 © Rate System.**

The principles for the FLN that are a part of our service offerings are contained in their entirety in our FREEDOM LOGISTICS NETWORK 21st CENTURY SHIPPER TRANSPORTATION SERVICES, which can be found at a secure link on our web site which we will provide to you before you partner with us. These written principles are what govern both our commitments and we want them readily available at all times so you can access them for your understanding and use.

In addition to providing you with pricing contained within and discounted off of the **FREEDOM 2020 © and 2021 ©** for use in selecting transportation/logistic services which are available in the FLN under our contracts, Tranzact will facilitate your logistics processes with transportation payment, audit services and management reports. These services are subject to standard principles that are on the secure link on our web site. These rules govern both of our commitments that arise from our signatures implementing your membership in the Freedom Logistics Network.

We have made a sizable investment in the system, which we license for your use. This is important to us because the value of the FLN is the integrity of the system. Please note in the rules that you cannot sell or license our system in any way, including brokering transportation through our system, or using our system, particularly **FREEDOM 2020 © and 2021 ©** or discounts, after you terminate your membership in the FLN.

We will implement your membership in the FLN immediately after receiving your endorsement. As shown in the principles, this commitment will be for a five- (5) year period and will automatically renew for additional two- (2) year periods unless you notify us at least sixty- (60) days prior to expiration of any period.

All contact information, passwords and other information will be given to you as the person authorized by your company to sign this membership commitment (unless you designate another individual).

**MEMBERSHIP ELECTION:**

MEMBER SHIPPER:
MICROMETL
An Indiana Corporation
3035 N. Shadeland Ave., Suite 300
Indianapolis, IN 46226

By: Gerald Holman
Title: Vice President, C.F.O.
Tel. No.: 317/524-5414   Fax No.: 317/543-5986

By: MARK WEBBER
Title: V.P., Mfg
TEL. NO: 317-524-5418

FREEDOM LOGISTICS NETWORK
TRANZACT TECHNOLOGIES, INC.,
An Illinois Corporation
360 W. Butterfield Road, Suite 400
Elmhurst, IL 60126

By: Jean H. Regan
Title: President, Tranzact Technologies, Inc.
Tel. No: 630/833-0890     Fax No: 630/833-0346

# EXHIBIT A





# SCHEDULE I

## *SOFTWARE, RATES, CHARGES, PAYMENT OPTIONS*

1.　**FREEDOM 2020© and FREEDOM 2021©** rates applicable to you as a Member Shipper can be found on the FLN Internet Website and are available to you effective as of the start date indicated on this contract. The rates are a part of this Agreement. As Member Carriers are added or deleted from the network, you will be notified by the FLN Logistics Group, and the FLN Internet Website will be updated accordingly. The applicable rates will be those that appear on the most current version of the FLN Internet Website.

2.　**FLN invoices will be paid** by Tranzact Technologies, Inc. All Shipments moving via the FLN will be invoiced on a weekly basis. All invoices to be paid by Tranzact should be forwarded to:

TRANZACT TECHNOLOGIES, INC.
360 W. Butterfield Road, Suite 400
Elmhurst, IL 60126

3.　**FLN Services** - FLN will provide the following services as a part of your FLN membership:

a. Audits for overcharges and duplicate payments will be included in the payments for all designated shipments transported by a Member Carrier or non-member carrier.
b. FLN will supply the following Monthly Management Reports:
　　1. Carrier Summary Corporate
　　2. Carrier Summary By Division
　　3. Lane Summary
c. Invoices from Parcel carriers will be paid at the manifest level only
d. StarRate (Software) web site for rating of Freedom shipments
e. StarLite Reporting System (Software) - License for Member Shipper use on-site: Prices quoted upon request
f. StarRate Software Integration with Internal Systems (Software) - License for Member Shipper use in house: Prices quoted upon request
g. Inbound Management Reporting System Software: Prices quoted upon request
h. On-Site Logistics Support: Prices quoted upon request
i. Flat file of **FREEDOM 2020 © and 2021 ©** Less Than Truckload rates – prices quoted upon request
j. Custom Software design – prices quoted upon request

4.　**Tranzact Technologies will conduct a post audit of freight charges** paid to carriers for shipments made up to 120-150 days prior to the effective date of this agreement. The exact time frame for including bills in the post audit depends upon the length of time needed to provide Tranzact the actual freight bills themselves as well as the pertinent rates, discounts and charges used in the post audit itself. In return for conducting the post audit, Tranzact will retain 40% of all monies recovered from overcharges related to the incorrect application of rates, discounts, rules or charges including duplicate billings

5.　**Initial Investment\*** .............................................**$ 1,500**
\*Includes start-up expenses to bring Member Shipper on-line to FLN

6.　**Monthly Investment\*\*** .......................................**$ 1,000**
\*\*The monthly investment for participation in the FLN:

7.    **All Member Shipper charges will be processed** by Tranzact Technologies, Inc. weekly. The procedure will be as follows:

a.    Weekly pay periods end on a scheduled day each week.
b.    All Freight invoices will be received on a daily basis.
c.    Freight invoices will be entered into the system within a reasonable period after receipt.
d.    The day prior to receipt of funds due, Member Shipper will be notified via facsimile transmission or e-mail of total dollars due to satisfy payment obligations for that week.
e.    Member Shipper will fund Tranzact Technologies (ACH or wire transfer) for weekly payment obligation no later than 5 p.m. on the next business day. If this payment obligation is not met by the next business day at 5 p.m., Member Shipper will be assessed a $200 late payment fee to be included in the next week's payment.

| PAYMENT OPTIONS | RECEIVING FUNDING INFORMATION |
|---|---|
| Client or Tranzact initiated ACH:<br>No Charge | Receive weekly by e-mail:<br>No Charge |
| All other forms of payment:<br>$50.00 per month administration fee | Receive weekly by fax:<br>$25.00 per month administration fee |

f.    If Member Shipper chooses not to fund via wire transfer or ACH, Member Shipper must provide Tranzact Technologies with the equivalent of four- (4) weeks' funds based upon an average of the prior 4 weeks experience or, if there is an insufficient period, then based upon an estimate by Tranzact Technologies.
g.    Payment to the Member Carriers will be released to each Member Carrier via check once collected funds are received.
h.    Member Shipper will be billed monthly for membership fees (manual, wire transfer or ACH).

8.    **Amendments Due to Volume**

If the average number of bills paid per month over a three-month period exceeds 1100, the monthly investment may be adjusted. The adjusted investment will not exceed $1 per bill.

This Schedule I issued on July 31, 2003

and becomes effective Aug. 18, 2003

MEMBER SHIPPER:
MICROMETL
An Indiana Corporation

Initials: [signature]
NAME: Gerald Holman
TITLE: CFO

MARK WEBBER
V.P., Mfg

FREEDOM LOGISTICS NETWORK
TRANZACT TECHNOLOGIES, INC.
An Illinois Corporation

Initials: [signature]
Jean H. Regan
President

Details                                                                Page 1 of 1

Freedom Logistics
Network 21st Century
Shipper Transportation
Agreement

# *Freedom Logistics*

**Freedom Logistics Network**
**21st Century**
**Shipper Transportation Agreement**
*Index*

**Schedule A**
Cargo Claims
Management and Other
Direct Responsibilities
Between Member
Shipper and Member
Carrier

Use the links to your left to read through
various sections of the agreement.

**Schedule B**
Freight Payment Terms
and Conditions

Select the  $\underline{I}$  button to return to this index from any page.

**Schedule C**
Less-Than-Truckload
Services, Rules and
Accessorial Charges

**Schedule D**
Specialized/Truckload
Services, Rules and
Accessorial Charges

E-mail us at Solutions@TranzAct.com
with any questions, or contact your
Freedom Logistics representative.

## FREEDOM LOGISTICS NETWORK
## 21st CENTURY SHIPPER TRANSPORTATION AGREEMENT

**THESE FREEDOM LOGISTICS NETWORK 21ST CENTURY SHIPPER TRANSPORTATION SERVICI** (herein after referred to as the "Agreement") are a part of the Freedom Logistics Network 21st Century Shipper Transportation Services Agreement, by and between Tranzact Technologies, Inc., doing business as the Freedom Logistics Network (hereinafter referred to as "FLN") and the Member Shipper of goods identified with particularity in the signature and authorization section of the Freedom Logistics Network 21st Century Shipper Transportation Services Agreement (hereinafter refer to as "Member Shipper".)

### RECITALS

**WHEREAS**, FLN has developed FREEDOM 2020© and FREEDOM 2021© as a part of a Logistics Management which Member Shipper is desirous of joining and participating;

**WHEREAS**, FREEDOM 2020© and FREEDOM 2021© provides a standardized price list for motor carrie transportation capable of being utilized in an electronic format;

**WHEREAS**, FLN has contracted a pool of motor carriers ("Member Carriers") who have committed to provide a standardized service subject to common rules and regulations pursuant to the provisions of FREEDOM 2020© and FREEDOM 2021©;

**WHEREAS**, FLN allows Member Shipper a unique ability to access special commodity rates and rare discounts allowing Member Shipper a competitive ability not otherwise available to Member Shipper;

**WHEREAS**, FLN arranges and coordinates the provision of motor carrier service through FREEDOM 2020© and FREEDOM 2021© payment clearances, claims coordination and other services allowing Member Shipper efficiencies in Member Shipper's utilization of motor carrier transportation.

**NOW THEREFORE**, in consideration of mutual promises including the above recitals adopted herein ar other good and adequate consideration, IT IS AGREED:

### DEFINITIONS

**"Software"** means the Software identified on Schedule I of the Global Transportation Services Agreement and made a part of this Agreement, in object code form, all updates and revisions thereof supplied by Tranzact during the term of this Agreement and all permitted copies of the foregoing, and includes any databases created and maintained by Tranzact in connection with the Software.

### ARTICLES

**ARTICLE I. FLN SERVICES.** FLN services will be provided on the following terms:

A.---RATES. FLN will bill Member Shipper for services performed by Member Carriers pursuant to rates based on the FREEDOM 2020© and FREEDOM 2021© rate schedules, initially effective and applicable solely for Member Shipper in Schedule II of the Freedom Logistics Network 21st Century Shipper Servi Agreement, as the exclusive rates for such services and no other rate or charge shall be applicable on shipments tendered by Member Shipper through FLN, subject to these conditions:

    (i) Because of the volatility of the transportation market, Member Carriers and Member Carrier's individual discount levels may vary during the term of this Agreement.

    (ii) If a Member Carrier is dropped or removes itself from FLN, FLN rates for that Member Carrier will no longer be available to Member Shipper.

    (iii) The Rates referred to in Schedule I will be provided on electronic format to Member

Shipper.

(iv) Other than the addition or subtraction of Member Carriers, the rates in effect on the initial date of this execution shall be allowed to remain in effect for at least one (1) year from the effective date of this Agreement, providing the presentation of Shipper's freight environment provided during the carrier bid process is an accurate representation of Shipper's current shipping environment. After one year from the initial effective date, other than the addition or subtraction of Member Carriers, the rates in effect shall be allowed to remain in effect for at least 30 days.

B.---RULES. FLN will bill Member Shipper for services performed by Member Carriers pursuant to FREEDOM 2020© and FREEDOM 2021© initially effective and applicable in Schedule I, as their exclusiv rule rates and no other rule rate or charge shall be applicable on shipments tendered by Member Shipp through FLN.

C.---FREIGHT CLAIMS. Member Carriers will receive and process all Member Shipper's freight shortage claims, damage claims and claims arising from non-delivery pursuant to the following conditions:

(i) FLN adopts the Customer/Carrier Service Agreement, as separate Agreement between Member Shipper and Member Carrier attached as Schedule A, adopted herein as the specific agent for the Member Carriers and not as a principal bound by the Customer/Carrier Service Agreement and Member Shipper appoints FLN to act as Member Shipper's agent with respect to the execution and delivery of the Customer/Carrier Service Agreement; provided, Member Shipper specifically recognizes Schedule A is being adopted herein solely for the benefit of the Member Carriers and Member Shipper; and, finally provided FLN is not bound by or obligated under the terms of Schedule A.

(ii) Member Shipper expressly adopts the Customer/Carrier Service Agreement, attached as Schedule A, as binding between Member Shipper and the Member Carriers; and further, accepts as a further showing of being contractually sound by Schedule A as specific between an individual Member Carrier and Member Shipper by the act of a tender of a shipment by Member Shipper and the acceptance of the shipment by an individual Member Carrier.

(iii) The purpose of this method of imposing contractual commitments is to facilitate the efficiency of the FLN and avoid a requirement of Member Shipper having to execute the Schedule A Agreement with every present and future Member Carrier.

(iv) Both parties specifically agree that Member Shipper shall be the sole and only party with whom a Member Carrier shall have to deal on cargo claims and other obligations to be resolved pursuant to the terms of Schedule A and any such claims and obligations shall be deemed to arise solely as direct obligations between Member Carrier and Member Shipper.

(v) FLN represents and covenants each Member Carrier has agreed to be bound by a duplicate counterpart of the Customer/Carrier Service Agreement, shown as Schedule A, as effective upon the date of each individual Carrier Member's first use by Member Shipper.

D.---PAYMENTS FOR TRANSPORTATION. FLN shall remit all payments by Member Shipper for services provided by Member Carriers to Member Shipper in the manner prescribed on the standardized Freight Payment Procedure, attached as Schedule B and adopted herein.

E.---SPECIAL SERVICE REQUIREMENTS. FLN will assist Member Shipper in arranging and coordinating special services in addition to standard services provided by FLN, which special services will be quoted upon request.

**ARTICLE II. MEMBER SHIPPER PARTICIPATION.** Member Shipper shall participate in FLN as follov

A.---PRICING EXCLUSIVITY. Member Shipper represents and covenants that the sole and only use of FREEDOM 2020© and FREEDOM 2021© and the rates based thereon, shall be through FLN subject at

Details

least to these conditions:

(i) Member Shipper shall not adopt the rates and rules of FLN as those of Member Shipper for use apart from utilization of the FLN, including but not limited to, a separate utilization in conjunction with Member Carriers.

(ii) In the event that Member Shipper utilizes any Member Carrier for FLN shipments, other than through FLN, Member Shipper agrees to pay to FLN an amount equal to the amount FLN would have retained if such shipment would have been handled in accordance with this FLN Agreement which amount will accrue inclusive of interest at a rate of 1 _% per month until FLN learns of such use and FLN may commence an action to collect such amounts within two years of the acquisition of such knowledge or a mandatory limitation of action period, whichever occurs first.

B.---MEMBER SHIPPER PAYMENT RESPONSIBILITY. Member Shipper represents that Member Shipper i solely and only responsible for the payment of monies due to the FLN for services rendered; and, such payments shall be made by Member Shipper pursuant to the Member Shipper payment procedure contained in Schedule I.

C.---MEMBER SHIPPER FEES. Member Shipper shall timely pay the fees and charges shown on Schedul adopted herein, for the provision and availability of FLN.

D.---MEMBER SHIPPER LOSS AND DAMAGE CLAIMS PROCEDURES. Member Shipper represents and covenants that Member Shipper shall process all claims, for lost and/or damaged freight, directly with Member Carriers pursuant to the terms and conditions of Member Shipper's direct contract with Membi Carrier contained in Schedule A and shall not claim liability against, or assert any responsibility arising from any claim subject to that contract that extends to, FLN.

E.---BILLING DISPUTES. The sole method of handling billing disputes shall be pursuant to these conditions:

(i) In the event Member Shipper contends there is an overcharge on any billing for transportation services Member Shipper will submit the contention of the overcharge solely to FLN within one hundred (100) days from the original payment of the transportation charges.

(ii) FLN shall not submit a claim to Member Shipper for undercharges after three hundred sixty (360) days from the date of payment.

(iii) Rebillings shall be made solely by FLN and Member Shipper shall not directly contact any Member Carrier without the written approval of FLN.

F.---SHIPMENT TENDERS CLAIMS. The standard conditions for tendering shipments shall be as follows

(i) Member Shipper shall tender all shipments in compliance with all requirements of applicable regulations and the law.

(ii) In the event of fines and penalties for overweight or other unlawful shipments, FLN will coordinate and mediate resolution of such controversies but Member Shipper agrees to assume direct responsibility for resolving such a controversy with the Member Carrier and other entities involved in the controversy.

G.---HAZARDOUS MATERIALS. Member Shipper represents and covenants that Member Shipper shall tender any and all hazardous materials to Member Carriers with notice of the hazardous material prior pickup and Member Shipper shall properly package, label, provide bill of lading and manifest designatic so that all such hazardous material shall be transportable in compliance with all applicable rules, regulations and laws of all jurisdictions through which the hazardous materials may move at the time t hazardous materials are tendered for shipment.

Details                                                                                           Page 4 of 8

H.---SECURITY COMPLIANCES. Member Shipper represents and covenants sole responsibility for the security of all shipments prior to acceptance of a shipment by a Member Carrier and following receipt f all shipments at destination; and, Member Shipper shall comply with laws and regulations applicable to the method of shipping and the consent of any shipment of Member Shipper.

I.---USE OF FREEDOM LOGISTICS CARRIERS. Agreements between Member Shipper and FLN Member Carriers will be exclusive; and in no event shall Member Shipper establish any other Agreements with I Member Carriers without written permission from FLN.

J.---USAGE COMMITMENT. Member Shipper agrees to tender 80 percent of Member Shipper's motor carrier LTL usage to Member Carriers subject to these further conditions:

(i) If Member Shipper fails to maintain this usage level the monthly maintenance fees may be adjusted.

(ii) For purposes of this Agreement, a LTL shipment is any shipment that weighs between 150 and 12,000 pounds or fills less than 50% of the cubic capacity of a trailer while weighing more than 12,000 pounds.

K.---FREIGHT PAYMENT. All freight bills must be paid through FLN and must adhere to the rules and guidelines set forth in this Agreement and as contained in Schedule B adopted herein.

L.---COORDINATION OF STATUTES. To the extent this Agreement may differ from existing Federal anc State regulations, Member Shipper specifically waives the rights and remedies contained in such statut pursuant to 49 U.S.C. Section 14101.

**ARTICLE III. SUPPLEMENTS AND MODIFICATIONS.** The rates, rules, and other provisions of FLN applicable between Member Shipper and FLN may be amended only by the following procedures:

A.---SUPPLEMENTS. Any Schedule, other than Schedule A to this Agreement may be supplemented or superseded or modified or terminated in whole or in part only by a thirty (30) day notice from FLN; wh notice shall be binding upon Member Shipper unless during that thirty day period Member Shipper noti FLN that Member Shipper elects not to be bound by the supplemental or superseding terms; and, thereafter, the supplemental or superseding terms shall only become effective by a writing executed b Member Shipper and FLN.

B.---AMENDMENTS AND MODIFICATION. Any additional supplement, amendment, modification or termination of schedule or terms of this Agreement, during the term of this Agreement depends upon I being able to effect the amendment or modification without breaching any other Agreement comprising FLN.

C.---RATE SCHEDULES. Rates charged by Member Carriers pursuant to Schedule I, may be supplemen or superseded effective at the time of notice by FLN; provided, so long as Member Shipper's specific shipping requirements remain constant those rates can only be superseded upon thirty (30) days notic as provided in Article III, Paragraph A.

D.---SCHEDULE A AMENDMENTS. Schedule A shall be amended only in a writing executed by Member Shipper and each Member Carrier to be used by Member Shipper.

**ARTICLE IV. LICENSE.** FLN licenses the Software and Rate Base, FREEDOM 2020©, and FREEDOM 2021© to Member Shipper and Member Shipper accepts from FLN a nonexclusive license to use the Software and the documentation related to Software, FREEDOM 2020©, and FREEDOM 2021© only during the term of this Agreement, subject to the following terms:

A.---EXCLUSIVE ADOPTION. Member Shipper adopts FREEDOM 2020© and FREEDOM 2021© as Memb Shipper's sole and only price list and schedules of rates for all transportation services subject to and arising out of this Agreement to the exclusion of any other rate maintained or utilized by the Member Shipper in conjunction with a Member Carrier even though such rate may not be specified in the same

form or manner in FREEDOM 2020© and FREEDOM 2021©. Member Shipper accepts this license, agre
to abide by all its terms, and acknowledges receipt of FREEDOM 2020© and FREEDOM 2021© as outlir
in Schedule I.

B.---LICENSE TERMINATION. ALL FREEDOM 2020© and FREEDOM 2021©material, as well as other FLI
material (deemed directly related to and an integral part of the FREEDOM 2020© and FREEDOM
2021©material and this license) shall be returned immediately upon the termination of this Agreement
without being copied in any manner and all such material shall remain the sole and exclusive property
FLN with Member Shipper remaining solely responsible for assuring this property interest regardless of
possession or transfer of possession of all or part of FREEDOM 2020© and FREEDOM 2021©, especiall·
the rate base contained in FREEDOM 2020© and FREEDOM 2021©.

C.---LICENSE CONFLICTS. Member Shipper shall conduct operations pursuant to this license and the ra
and rules of this license within the scope of the FLN; and, if Member Shipper's utilization of transportat
and the incidents of transportation conflict then Member Shipper specifically agrees the terms of this
license and Agreement are paramount and accedes to enforcement of the requirements of FLN, inclusi·
of attorney fees and costs, with waiver of any bond or other surety otherwise incidental to any such
enforcement.

D.---COPYRIGHT. Member Shipper expressly recognizes and concedes FLN is entitled to all ownership
rights in Software, FREEDOM 2020© and FREEDOM 2021© and all rights and remedies of the Lanham
pertaining to copyrights.

E.---SERVICE MARKS. Member Shipper specifically recognizes and concedes that Freedom Logistics, Fl
StarLite, StarRate, StarView, StarPlan, Software FREEDOM 2020© and FREEDOM 2021© are service
marks owned solely by FLN and Member Shipper shall utilize those service marks solely as authorized |
FLN.

F.---COPIES. FREEDOM 2020© and FREEDOM 2021© may not be copied, modified, or combined with
other materials, provided, however, that Member Shipper will have no more than two machine readabl
copies of the programs in existence at any one time for archival purposes; and, provided further, Mem
Shipper agrees to reproduce FLN's copyright notice or other proprietary notices on all copies of the
FREEDOM 2020© and FREEDOM 2021© made hereunder.

G.---RATING SOFTWARE ROYALTY FEE. The monthly maintenance fee, as covered in Schedule I, incluc
a rating Software royalty fee and if Member Shipper discontinues payment of the monthly maintenance
fee, the rates will terminate unless Member Shipper continues to use the licensed material beyond the
termination date; provided, if Member Shipper continues using the Software of FLN following terminati
Member Shipper shall pay the monthly maintenance fee for each month with interest accruable of 1_%
per month until paid as the minimum reasonable damages for Member Shipper's infringement.

**ARTICLE V. INDEPENDENT CONTRACTOR RELATIONSHIP.** Member Shipper and FLN shall perforn
under this Agreement solely and only as independent contractors specifically with regard to the followi·
shown by way of inclusion and not as an exclusion of other instances of independent contract or action

A.---The provision of any services by an employee or agent of one of the parties on behalf of the other
shall be deemed independent contractor services.

B.---Member Shipper and FLN specifically agree that no act shall represent an act of implied or apparer
agency (except as provided in Article I Paragraph C); that one shall bind the other only by a specific
written Agreement signed by both parties; and, each shall indemnify and hold the other harmless from
any act that gives rise to a claim or liability by reason of a reasonable reliance upon such act.

**ARTICLE VI. PROPRIETARY INFORMATION.** FLN and Member Shipper acknowledge and agree, eac
to the other, that any and all information emanating from the other's business, in any form, including a
compilations or otherwise public information is "Confidential and Proprietary Information"; and, each
party agrees that it will not, during the term of this Agreement or for five years after the term of this
Agreement, permit the duplication, use or disclosure of any such "Confidential and Proprietary
Information" to any person (other than its own employees, agents or representatives who must have s

information for the performance of its obligations hereunder), unless such duplication, use, or disclosur is specifically authorized by the other party; which duty is subject at least to the following specific tern

A.---Each party shall be responsible for any unauthorized disclosure made by any of its employees, servants, or agents and shall take reasonable precautions to prevent such disclosures.

B.---For the purposes of this Agreement, the term Confidential and Proprietary Information is not meal to include any information which, at the time of disclosure, is publicly available information disclosed t( the other party by third parties having the right to do so and who have not imposed upon the receivinç party obligations of confidentiality in respect thereof; and, information which is known to the other par prior to the disclosure.

C.---Each party agrees that if there is a breach or threatened breach of this Article VI, the other party have no adequate remedy in money or damages and shall be entitled to seek a temporary restraining order, injunction, or other equitable relief against the continuance of such breach in addition to all othe remedies, and without the requirement of posting a bond or undertaking, or proving injury as a conditi for relief.

**ARTICLE VII. RESALE OF SERVICE.** Member Shipper shall act solely as the beneficial owner of all goods being transported by reason of Member Shipper's use of FLN and Member Shipper shall not sell, arrange or receive a commission on services arranged through FLN.

**ARTICLE VIII. LIMITATION OF LIABILITY.** FLN shall be liable under this Agreement as follows:

A.---The liability of FLN under this Agreement shall be limited to actual money damages arising solely, directly and proximately from the gross negligence or willful misconduct of FLN, its agents or employee or the failure of FLN to provide the service described in this Agreement.

B.---FLN shall not be liable for any special, consequential or exemplary damages.

C.---FLN shall not be liable for failure to provide the service contemplated by this Agreement if such failure is due to a cause or condition beyond the control of FLN.

D.---The maximum amount of liability of FLN to Member Shipper under this Agreement shall be the compensation received by FLN for services for the three-month period prior to the date on which the a giving rise to the liability is discovered.

E.---The compensation of FLN shall be deemed to be the difference between the amount paid to FLN b Member Shipper and the amount paid by FLN to the Member Carriers for the transportation of Member Shipper's shipments.

**ARTICLE IX. ASSIGNMENT.** This Agreement is not assignable without the written consent of the othe party; provided, however, a party's change of name and/or merger, consolidation or sale of substantia all of a party's assets as a going business shall not constitute an assignment of this Agreement.

**ARTICLE X. SEVERABILITY AND IMPAIRMENT.** This Agreement is severable and the unenforceabil of any portion of this Agreement shall not void or invalidate the remaining portions which shall continu full force and effect; provided however, that if this Agreement is materially impaired FLN may cancel tl Agreement, without prejudice to any other right or remedy, after sixty-days notice or a date required t law, whichever occurs first.

**ARTICL XI. ADOPTION BY REFERENCE.** Both parties specifically agree this Agreement is supplemer by schedules in a written or electronic form which shall be a part of and subject to this Agreement as il was set forth on the face of this Agreement and adopts all such terms herein by reference and this Agreement shall not otherwise be amended except as follows:

A.---The terms of the schedules adopted herein may be supplemented, terminated, superseded, or modified and new terms may be added by reference to this Agreement in the manner provided in Artic

Details

III; but the terms of this base Agreement (excluding the attached schedules adopted by reference) sha be deemed effective until amended by a writing bearing an effective date and executed by an authoriz individual of both Member Shipper and FLN.

B.---A writing amending this base Agreement shall include a facsimile transmission signed and transmitted so long as a complete fully executed writing has been transmitted to both Member Shipper and FLN.

**ARTICLE XII. NOTICES.** All notices involving Schedules to this Agreement may be made by written c electronic communications that are confirmed are received and all notices involving this base Agreemen shall be deemed given only if made in writing and sent by Certified Mail return receipt requested or by confirmed facsimile transmission; such notice shall be deemed received at the date and time shown on return receipt or a transmission verification and all notices shall be sent to the physical and electronic addresses in the signature and authorization section of this Agreement.

**ARTICLE XIII. TERM AND TERMINATION.** Except when automatically terminated, the term of this Agreement is governed by the FLN Base Contract.

A.---Member Shipper recognizes and concedes financial responsibility is a material condition to participation in the FLN and agrees that FLN may immediately terminate this Agreement upon delivery written notice to Member Shipper if Member Shipper fails to timely pay freight bills presented to Memb Shipper; and, further, authorizes and holds FLN harmless from liability arising from notification to Mem Carriers of any such termination.

B.---This Agreement shall terminate automatically without notice if either party shall file a voluntary petition in bankruptcy, shall have made an assignment for the benefit of creditors, shall have been involuntarily adjudicated bankrupt by any court of competent jurisdiction, or if a receiver shall have be appointed for either party. C. Upon notice of Member Shipper's termination, Member Shipper specifica recognizes as reasonable the following termination procedures, which are obligations of Member Shipp

   (i) All freight bills and other invoices of Member Carriers representing services of Member Carriers through the close of business on the date of termination of Member Shipper's participation as a member of FLN shall be directed to FLN for processing and payment, and FLN shall process those freight bills and other invoices for a charge of one dollar ($1.00) per freight bill and other individual invoice for a period of ninety- (90) days following the date of termination.

   (ii) Member Shipper shall provide funding weekly to disburse payments to Member Carriers, from the date of termination to ninety- (90) days after termination.ARTICLE XIV. WARRANTIES. FLN and Member Shipper warrant and covenant, one to the other, as follows:

A.---GOOD STANDING. FLN and Member Shipper are duly constituted and in good standing in the jurisdiction of incorporation, domicile and all jurisdictions in which either is required to be qualified to maintain a residence or to do business.

B.---SIGNATURE AUTHORITY. FLN and Member Shipper are authorized to enter this Agreement and to bound by all terms of this Agreement by the signature of the person signing this Agreement.

C.---NO REPRESENTATION OR STATEMENT NOT EXPRESSLY CONTAINED IN THIS AGREEMENT SHALL BINDING UPON FLN AS A WARRANTY OR OTHERWISE; AND, SPECIFICALLY PROVIDED, WARRANTIES PROVIDED IN THIS AGREEMENT ARE IN LIEU OF ALL OTHER WARRANTIES, EXPRESSED OR IMPLIED, INCLUDING, BUT NOT LIMITED TO, THE IMPLIED WARRANTIES OR MERCHANTABILITY AND FITNESS F A PARTICULAR PURPOSE.

**ARTICLE XV. CONTROLLING LAW.** The applicable laws and venues to the Agreement are as follows:

A.---The parties specifically agree that this Agreement shall be construed and enforced in accordance v the laws of the State of Illinois except where Federal law is applicable.

Details                                                                                    Page 8 of 8

B.---The parties mutually consent and submit to the jurisdiction and venue of the Federal and/or State courts located in Cook or DuPage Counties, Illinois and any action or suit concerning this Agreement or related matter shall only be brought by the parties in these Federal or State courts with appropriate subject matter jurisdiction therein.

C.---The parties mutually acknowledge and agree that they shall not raise in connection therewith, and hereby waive, any defenses based upon venue, inconvenience of forum, lack of jurisdiction in any action or suit brought in accordance with the foregoing.

**ARTICLE XVI. MERGER.** This Agreement represents the controlling and only understanding of the parties and supersedes, and replaces and cancels all prior oral and written understanding from before after the execution of this Agreement.

**ARTICLE XVII. INDEMNITY.** Member Shipper shall indemnify and save FLN harmless from and again all losses, claims or damages, penalties, costs and expenses caused by fault or negligence of Member Shipper, and from any and all claims of whatever nature by whomever made against FLN arising out of FLN's action upon Member Shipper's information or instruction.

**ARTICLE XVIII. CONSULTATION.** The parties represent they are skilled and knowledgeable regarding the matters covered by this Agreement and the matters that may arise out of this Agreement and, after due opportunity to consult with an attorney or professional of choice and after taking all action deemed necessary, execute this Agreement freely, without duress and with the full intent of being bound in every regard by the Agreement.

**ARTICLE XIX. POST AUDIT.** Tranzact Technologies will conduct a post audit of freight charges paid t carriers for shipments made up to 120-150 days prior to the effective date of this agreement. The exact time frame for including bills in the post audit depends upon the length of time needed to provide Tranzact the actual freight bills themselves as well as the pertinent rates, discounts and charges used the post audit itself. In return for conducting the post audit, Tranzact will retain 40% of all monies recovered from overcharges related to the incorrect application of rates, discounts, rules or charges including duplicate billings.

**ARTICLE XXI.** CAPTIONS. The captions contained in this Agreement are inserted only as a matter of convenience and in no way define, limit or extend the scope or intent of the Agreement or any provision there.

**ARTICLE XXII.** MULTIPLE ORIGINALS. The parties may execute multiple conformed copies of this Agreement, inclusive of schedules and other terms adopted by reference, and each executed Agreement shall be deemed an original.

**ARTICLE XXIII. COMPLIANCE WITH LAW.** Member Shipper will not tender any shipment which would cause Member Shipper, FLN or a Member Carrier to violate any laws or regulations, State, Federal, or otherwise and will indemnify and hold harmless FLN and Member Motor Carriers from any failures of th representation.

Details

## FREEDOM LOGITICS NETWORK CARGO CLAIMS MANAGEMENT AND OTHER DIRECT RESPONSIBILITIES BETWEEN MEMBER SHIPPER AND MEMBER CARRIER

This Schedule A represents an Agreement directly between Member Shipper and each Member Carrier so long as they shall remain members of the FLN under an existing and effective contract with FLN wherein they appoint FLN their special agent to bind them to this Agreement.

**ARTICLE I. PURPOSE OF THIS AGREEMENT.** There are certain transportation functions that shall and must be met by direct dealings between Member Shipper and Member Carriers without the involvemer FLN other than to establish this contractual relationship and, as pertinent herein, they include:

A. All cargo liability arising from damage or loss to, or arising from, the cargo tendered and transported;

B. All personal injury and property damage arising from, or occurring to, the equipment operated by Member Carriers; and,

C. All employee and employer responsibility involved where there is direct, in person interaction between the employees of Member Shipper and the employees of Member Carriers.

**ARTICLE II. PRIVITY OF CONTRACT.** Although FLN possesses full and complete authority to bind Member Shipper and Member Carriers to the terms and obligations contained in this Schedule A contra Member Shipper and Member Carriers specifically intend that all terms and obligations shall be directly between them and they shall directly enforce and abide by such terms and obligations without involvin FLN including jointly and severally holding FLN harmless from any such involvement.

**ARTICLE III. INDEPENDENT CONTRACTOR RELATIONSHIP.** It is specifically understood by Memb Shipper and Member Carriers that in the performance of this Agreement, Member Carriers and Membe Shipper maintain their respective employees as their exclusive employees at all times and never as the agent or employee of the other. Neither Member Carriers nor Member Shipper shall be responsible for action or omission to act of the other's employee.

**ARTICLE IV. COMMODITY SPECIFIC REQUIREMENTS.** Member Shipper shall meet commodity spe standards in tendering certain shipments to Member Carriers as follows:

A. Member Shipper shall clearly identify all edible materials, drugs that are ingested or injected intravenously, or materials otherwise taken internally by inserting the word "Foodstuffs" on the bill of lading and shall also provide other identifying information as to drug classification or other identifying marks as required by law.

B. Member Shipper shall clearly identify all shipments classified by law as poisons, particularly those so classified by the United States Department of Transportation, by inserting the word "Poison" on the bill of lading.

C. Member Shipper shall properly package and properly identify on the bill of lading any commodities classified as hazardous materials by the United States Department of Transportation.

D. Member Shipper shall not utilize initials or acronyms in identifying the commodities described in this Article IV or other commodities that are covered by laws or regulations requiring identification due to the health, safety and welfare of the public.

E. Member Shipper covenants to indemnify and hold Member Carrier harmless from any failure to correctly identify Commodities described in this Article IV and this covenant extends to improper loading and transportation violations arising out of the failure of the Member Shipper's covenants contained in this Article IV.

**ARTICLE V. CARRIER SPECIFIC REQUIREMENTS.** Member Carriers shall meet service specific standards in transporting certain shipments of Member Shipper as follows:

A. Member Carriers represent and covenant that they and each of them can and will provide the proper equipment with properly trained personnel to receive, safely transport and deliver the goods tendered by Member Shipper.

B. Member Carriers represent that trailers will be dropped at the facilities designated by Member Shipper for loading as requested by Member Shipper.

C. When requested by Member Shipper, Member Carriers shall secure delivery appointments, deliver at the scheduled times and, upon request, report appointment times and delivery times within 24 hours of delivery.

D. When requested by Member Shipper, Member Carriers will perform an expedited transportation service.

E. Claims from Member Shipper will be handled in the following manner:

1. A claim for loss, damage, injury or delay to cargo will not be voluntarily paid by Member Carrier unless filed in writing, as provided below, with Member Carrier, within 9 months of the date of delivery of shipment or within 9 months of the date Member Carrier notifies Member Shipper that the shipment is lost. A communication in writing from Member Shipper, filed with Member Carrier within 9 months and (a) containing facts sufficient to identify the shipment (or shipments) of property involved, (b) asserting liability for alleged loss, damage, injury or delay, and (c) making claim for payment of specified or determinable amount of money, will be considered as sufficient. Concealed damage will be subject to Item 300135 in the National Motor Freight Classification in effect at the time of the shipment.

2. Using form described herein above, acknowledge receipt of such claim in writing to Member Shipper within 30 days after date of its receipt by Member Carrier, unless Member Carrier will have paid or declined such claim in writing within 30 days of the receipt thereof. Member Carrier will indicate in its acknowledgment to Member Shipper what, if any, additional documentary evidence or other pertinent information may be required by it to process the claim as its preliminary examination of the claim, as filed, may have revealed.

3. Each claim filed against Member Carrier in the manner prescribed herein will be promptly and thoroughly investigated if investigation has not already been made prior to receipt of claim.

4. Member Carrier when it has received a written claim for loss or damage, injury, or delay to property transported will pay, decline, or make a firm compromise settlement offer in writing to Member Shipper, within 60 days after the receipt of the claim by Member Carrier; provided, however, that, if the claim cannot be processed and disposed of within 120 days after the receipt thereof, Member Carrier will at that time and at the expiration of each succeeding 30-day period while the claim remains pending, advise Member Shipper in writing of the status of the claim and the reason for the delay in making final disposition thereof and will retain a copy of such advice to Member Shipper in its claim file.

5. Member Carrier shall be liable for Member Shipper's "full actual loss" resulting from loss, damage, injury or delay, subject to Article V paragraph 7 and 7A hereinafter. "Full actual loss" is the invoice price of freight tendered to the Member Carrier for transportation; provided, however, that Member Carrier shall not be responsible for any loss, damage, injury or delay resulting from acts of God, public enemy, revolution, civil disorder, war, fire, flood or from failure of

Details

equipment not resulting from negligence on its part.

6. Member Carrier shall be responsible for all claims or damage resulting or claimed to have resulted from act or failure to act on its part or the part of its agents and drivers or from equipment or the condition of equipment furnished hereunder. Member Carrier agrees to indemnify, defend and save harmless FLN from death or injury to persons or damage to property including without limitation, contamination arising from, or as a consequence of, the services provided by Member Carrier under this Agreement, its act or failure to act, or the actions or failure of action of its agents and driver, or its negligence, willful misconduct or violation of law.

7. In the event of loss and/or damage to any shipment, the Carrier's liability will not exceed $10.00 per pound, subject to a maximum liability of $100,000 per occurrence unless the Shipper requested excess liability coverage. The liability of the Carrier for any commodity that is subject to the released value provisions of the NMFC Tariff current version at time of shipment, shall be limited to the lowest released value for the commodity therein, irrespective of the value declared or linehaul rate applied. Used or reconditioned machinery shall be released to a value not to exceed one dollar ($1.00) per pound.

8. Any action at law by Carrier to recover undercharges hereunder, or by Shipper to recover overcharges hereunder, shall be commenced not more then one hundred eight (180) days from the date of the original invoice. To the extent permitted by applicable law, the expiration of such one hundred eighty (180) day period shall be a complete and absolute defense to any action, without regard to mitigating or extenuating circumstances. Any waiver of this defense must be made in writing by the party entitled to assert such defense. The provisions of this section shall survive the cancellation, termination or expiration of this agreement.

9. As Consignor, Shipper shall identify clearly when tendered to Carrier all edible materials, drugs that are ingested or injected intravenously, or materials otherwise taken internally (collectively referenced as "foodstuffs") by inserting the "Foodstuffs" on the bill of lading. Initials or acronyms are not acceptable. As consignor, consignee, or third party to the shipment, Shipper shall indemnify Carrier if foodstuffs are not so identified and result in improper loading violation on any shipment moving under this agreement.

10. As Consignor, Shipper shall identify clearly when tendered to Carrier all shipments containing materials that are classified by United States Department of Transportation regulations as poisons by inserting the "Poison" on the bill of lading, Initials or acronyms are not acceptable. As consignor, consignee, or third party to the shipment, Shipper shall Carrier if poisons are not identified and result in improper loading violation on any shipment moving under this agreement.

**ARTICLE VI. FREEDOM LOGISTICS NETWORK ASSURANCE.** Member Shipper and, by counterpart Agreement, Member Carriers specifically recognize the terms of this Schedule A represent a distinct Agreement establishing duties solely between the Member Shipper and Member Carriers without any duties on the part of FLN within the scope of this Schedule A and Member Shipper and Member Carrier covenant to hold FLN harmless (including specifically, but not by way of limitation, attorney fees) from any such involvement including civil and criminal actions, arbitrations, or controversies of any kind.

Details

## Freight Payment Terms and Conditions

The service for the development and provision of the STRATEGIC TRANSPORTATION ACCOUNTING REPORTS (SERVICE) and freight bill processing of TRANZACT TECHNOLOGIES, INC. (Tranzact) as part of the services of the FLN accruing for the benefit of Member Shipper will be provided as follows:

1.---Tranzact shall supply all necessary instructions to enable Member Shipper to supply the appropria information and to utilize the SERVICE and the output of the SERVICE.

2.---Member Shipper shall deliver or notify all Member Carriers to deliver Member Shipper's freight bill the address designated by Tranzact.

3.---Member Shipper authorizes Tranzact to pay regular and properly documented freight bills which h been received by Tranzact. Member Shipper shall provide Tranzact with funds, which Tranzact will dep in a freight escrow account. If Member Shipper's available funds in Tranzact's escrow account are insufficient to pay Member Shipper's freight bills, Tranzact may, without any liability on its part, send s freight bills unpaid to Member Shipper.

4.---SERVICE shall commence on the effective date of the Agreement and continue until terminated by either Member Shipper or Freedom Logistics Service pursuant to that Agreement.

5.---The charges for the SERVICE are outlined in Schedule I of the Freedom Logistics Network 21st Century Shipper Global Transportation Services Agreement.

6.---In the event changes in SERVICE are requested, charges associated with such changes shall be negotiated at the time of request. If FLN and Member Shipper do not agree on these charges, there wi be no change in service or charges.

7.---At Member Shipper's expense, Member Shipper shall promptly review, to verify the accuracy of processing, all records and information Tranzact delivers from time to time to Member Shipper. Upon discovering any error in the records or information, Member Shipper shall immediately notify Tranzact such error.

8.---Tranzact shall process the data furnished by Member Shipper, with due care and within the time specified in the PROPOSAL, provided that the Member Shipper has furnished the data within the time limits specified by Tranzact. Tranzact shall not be responsible for errors in the data provided to Tranza

9.---Tranzact shall not be liable for Member Shipper's freight charges except for payment of freight charges as required by this Agreement. In the event of an error arising out of machine or program malfunctions or failure, or negligence of Tranzact in the performance of the SERVICE, Tranzact will con such errors. Upon notification within the statutory period, Tranzact will file claims and pursue recovery overpayments or mispayments resulting from such error, and upon recovery, Tranzact will pay to Mem Shipper all recovered amounts plus any interest received from the carriers.

10.---Tranzact's liability under this Agreement shall be limited to actual money damages arising solely, directly and proximately from Tranzact, its agents or employees deliberate act or omission (such as fidelity loss or theft) or from Tranzact's performing or failing to perform the SERVICE. Tranzact shall n be liable for any special, consequential or exemplary damages. Tranzact shall not be liable for failure t provide the SERVICE if such failure is due to a cause or condition beyond Tranzact's control. The maximum amount of Tranzact's liability to Member Shipper under this Agreement shall be the compensation received by Tranzact for SERVICE for the period of three (3) months prior to the month which the act giving rise to the liability is discovered.

11.---Member Shipper shall indemnify and save Tranzact harmless from and against all losses, claims damages, penalties, costs and expenses caused by fault or negligence of Member Shipper, and from an and all claims of whatever nature by whomever made against Tranzact arising out of Tranzact's action

Details

based or in reliance upon Member Shipper information or instructions.

12.---NO REPRESENTATION OR STATEMENT NOT EXPRESSLY CONTAINED IN THIS AGREEMENT SHALL BINDING UPON TRANZACT AS A WARRANTY OR OTHERWISE. WARRANTIES PROVIDED IN THIS AGREEMENT ARE IN LIEU OF ALL OTHER WARRANTIES, EXPRESSED OR IMPLIED, INCLUDING, BUT NC LIMITED TO, THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE.

13.---All programs and services developed by Tranzact and all manuals, materials and documentation provided by Tranzact to Member Shipper in connection with or prior to this Agreement are proprietary confidential and shall remain the sole property of Tranzact. Member Shipper shall keep in confidence a shall not disclose or use for the benefit of others, any and all proprietary information provided to it by Tranzact, except as necessary in performance of SERVICE, except as specifically authorized in writing I Tranzact or as required by law. This restriction shall survive performance and/or termination of this Agreement for a period of five years. Upon termination of this Agreement, Member Shipper shall prom return Tranzact's property to Tranzact.

14.---Member Shipper shall maintain all source documents, data that has already been processed, and audit records. Member Shipper data used in the processing of Member Shipper information is the sole i exclusive property of the Member Shipper. Member Shipper and its auditor shall be permitted reasonal access to Member Shipper data in Tranzact's possession used in the processing of its information, subj to Tranzact's security requirements. Tranzact shall keep in confidence and shall not disclose or use for benefit of others, any and all information produced hereunder for Member Shipper or provided to Mem Shipper, except as necessary in performance of SERVICE, as specifically authorized in writing by Memt Shipper or as required by law. This restriction shall survive performance and/or termination of this Agreement for a period of five years.

15.---Member Shipper shall not use Tranzact's name or refer to Tranzact and Tranzact shall not use Member Shipper's name or refer to Member Shipper, directly or indirectly, in any advertisement, news release or release to any professional or trade publication without receiving the other party's written approval for such use and release. This paragraph shall in no way limit either party's ability to satisfy any disclosure of their relationship with each other, which is required by law or by this Agreeme

16.---Data submitted by Member Shipper to Tranzact for processing shall be transported at Member Shipper's expense and risk from Member Shipper's premises to Tranzact's office and return.

17.---In the event this Freight Payment Terms and Conditions and referenced Proposal conflicts with a other term, condition or schedule of the Agreement, that Agreement shall have control over this Freigh Payment Terms and Conditions; provided, it is the specific intention of the Member Shipper and Tranze to utilize this Freight Payments Terms and Conditions and referenced Proposal as a continuing contract commitment covering SERVICES performed for Member Shipper involving motor carriers who are not Member Carriers or who have terminated their status as Member Carriers and, in that event, this Freig Payment Terms and Conditions and referenced Proposal shall continue as a distinct Agreement survivir the termination of the Agreement until cancelled by Member Shipper or Tranzact upon 30 days notice.

## LESS-THAN-TRUCKLOAD SERVICES, RULES AND
## ACCESSORIAL CHARGES

**The accessorial charges listed below are representative (but not limited to) of the type of charges authorized and under contract with the Freedom Logistics carrier members. Actual charges will be applied to shipments as provided in the Freedom Logistics Network Motor Carriers Transportation Service Agreement between Tranzact Technologies, Inc. and each member carrier.**

Less Than Truckload

Rule No. 1   BILL OF LADING/CORRECTION - A charge of $20.00 per freight bill will apply whe a request is made to change a freight charge collection status of a shipment or a request is made to cancel an Order Notify Bill of Lading.

Rule No. 2   CAPACITY LOADS MINIMUM CHARGE – On LTL rated shipments, the charge shall the applicable rate at the applicable weight or applicable minimum weight, but in case less than the following application of rates:

> A. When the lineal feet is 26 feet but less than 36 feet class 50 is applied on a 20M-rate scale.

> B. When the lineal feet is 35 feet but less than 45 feet class 50 is applied on a 30M-rate scale.

> C. When the lineal feet is 45 feet or over class 50 is applied on a 40M-rate scale.

> *Exception* – Vitran Express: Capacity (Full load); $3.61 per pup mile. $6.74 per : of pups or van. Minimum Charge $562.00. A pup is defined as a vehicle that is : lineal feet, or any shipment that is less than 28 lineal feet and weights 22,000 lbs or more. A van is any vehicle over 28 lineal feet or any shipment that is over 28 lineal feet and less than 53 lineal feet and weighs 44,000 lbs. or more.

Rule No. 3   COLLECT ON DELIVERY (COD) SHIPMENTS - The charge for collecting and remitti the amount of each COD shipment will be 3% of the COD amount, subject to a minimum of $25.00 per shipment. A correction or cancellation of a COD shipment will be subject to a charge of $34.00 per shipment.

Rule No. 4   CHARGE FOR OVERLENGTH - Pieces or articles exceeding 120 inches in length wil be assessed a charge of $5.48 for each 12 inches or fraction of 12 inches over 12 inches subject to a minimum over length charge of $10.68 per shipment.

Rule No. 5   CUBIC CAPACITY AND DENSITY - Any shipment which is greater than 350 cubic f and has an average density of less than four pounds per cubic foot will be subject a minimum charge arrived at by multiplying the total cubic feet by 6 pounds to g the applicable weight of the shipment for rating purposes.

Rule No. 6   CUSTOMS OR IN BOND FREIGHT - Shipments moving under a United States Customs Bond for United States Customs clearance will be assessed $1.50 per ea 100 lbs. with a minimum charge of $29.00 and maximum of $138.00 per shipmei

Rule No. 7   DELIVERY FEE TO INDIAN RESERVATIONS - When a shipment is delivered within Indian Reservation, and a permit is required by a Tribal Authority, there will be a charge of $10.00.

Rule No. 8   DETENTION WITH POWER – A consignor or a consignee will be allowed free time one (1) minute per each 100 lbs. or fraction thereof on each shipment subject to minimum of 30 minutes free time. The computation of free time shall be based o

Details

actual weight per vehicle stop. When a vehicle is delayed beyond the free time, th charge for detention beyond allowable free time will be $15.00 per vehicle for eac 15 minutes or fraction thereof, subject to a minimum charge of $30.00.

*Exception* – Vitran Express:

| Actual weight per stop | Free time in minutes per stop |
|---|---|
| Less than 2,500 lbs. | 30 |
| 2,500 but less than 5,000 lbs. | 45 |
| 5,000 but less than 7,500 lbs. | 60 |
| 7,500 but less than 10,000 lbs. | 75 |
| 10,000 and over | 90 |

When the loading or unloading is delayed beyond the free time, the charge per vehicle for each 15 minutes, or fraction thereof, beyond free time will be $30.00.

Rule No. 9   DETENTION WITHOUT POWER – A consignor or a consignee will be allowed 24 hours free time from the time of a trailer spot and/or the notification when a trail is available for delivery. When a trailer is delayed beyond the allowable free time, the charge for detention will be $34.00 per trailer for each 24-hour period or fraction thereof (excluding non-business days).

Rule No. 10   FUEL SURCHARGE – The Freedom Logistics fuel surcharge (FSC) is based on Monday's national average diesel price of fuel (with the exception of Dependable Highway Express where it is based on the California index) and appears as an accessorial charge on the carrier's freight bill.  In the event the Monday price triggers a change in accordance with the FSC adjustment schedule, any such adjustment will take effect on Wednesday of the same week.  The Freedom FSC v always be below that of the carrier's proprietary FSC applied outside of Freedom.

Rule No. 11   HAZARDOUS MATERIALS - A charge of $5.00 per shipment will be applied to any shipment containing commodities which have UN or NA hazardous materials numbers assigned.

   *Exception* – Vitran Express: $7.00 per shipment

Rule No. 12   INSIDE DELIVERY - When requested by a consignor or a consignee to handle frei beyond a point immediately adjacent to a vehicle, the assessed charge will be $4 per 100 lbs. of shipment weight with a minimum of $33.00 and a maximum of $400.00 per shipment.

   *Exception* – Federal Express Freight $40.00 Flat Charge.

   *Exception* – Vitran Express: $30 flat charge

Rule No. 13   LIFTGATE SERVICE - The charge for a required lift gate service will be a flat char of $40 per delivery required.

Rule No. 14   MARKING AND TAGGING – Where freight in transit is marked and tagged, with written authorization the charge shall be $.85 per package, subject to a $30.00 minimum charge.

   *Exceptions* - Milan Express: $1.50 per package, $20.00 minimum charge.

Rule No. 15   MARKING OR TAGGING FREIGHT – When a consignor or a consignee requests a shipment be marked or a change be made to a tag, label or stencil on a shipment charge of $1.50 per package or piece subject to a minimum charge of $20.00.

Rule No. 16   NOTIFY PRIOR TO DELIVERY – $10.00 per bill.

Rule No. 17   PICKUP OR DELIVERY AT PRIVATE RESIDENCE - Pickup or delivery at private residences, farms, ranches, churches, fairs, carnivals, trade shows, circuses and

Details

auditoriums will be subject to $30.00 flat charge.

*Exception* – Federal Express Freight $40.00 Flat Charge.

Rule No. 18   PICKUP OR DELIVERY SERVICE ON SATURDAYS, SUNDAYS, OR HOLIDAYS - Whe consignor or a consignee requests the pick up or delivery of freight on Saturdays, Sundays, or Holidays (non business days), such service will be subject to a charg of $49.00 per person per hour or fraction thereof with a minimum charge of $300.00 per person per day; which charges shall be in addition to all other applicable charges.

Rule No. 19   PROTECT FROM FREEZING - $10.00 per shipment.

Rule No. 20   REDELIVERY - If one or more additional tenders (Redelivery) is required at consignee's address, the charge per redelivery shall be $2.20 per 100 lbs. subjec $22.50 minimum and a $268.00 maximum charge.

Rule No. 21   RECONSIGNMENT OR DIVERSION – The charge for Reconsignment or Diversion shall be $2.20 per 100 lbs. subject to a $22.50 minimum and a $268.00 maximur charge.

*Exceptions* – Roadrunner Freight System, prior tender within original destination point is $25.00, Change in destination point will be charged published rate. After tender name change $35.00. Change in place of delivery within destination point $3.80 cwt minimum $35.00, maximum $268.00.

Dayton Freight Lines, Central Transport Int'l – Prior tender within original destination point = $25.00. Change in destination point = published rate. After tender name change is $35.00. Change in place of delivery within destination poi: $3.50 cwt minimum $35.00, maximum $100.00.

Rule No. 22   SORTING AND SEGREGATING OF SHIPMENTS – When a consignor or a consignee requests the sorting or segregation of a shipment by distinguishing characteristic: there will be a charge of $1.00 per cwt, subject to minimum $25.00 charge.

*Exception* – Vitran Express: When a consignor or consignee requests the sorting segregating of a shipment by distinguishing characteristics there will be a charge $.50 per piece, or $1.50 cwt, whichever is greater, subject to a minimum of $50.

Rule No. 23   STORAGE – Freight held in Carrier's possession through no fault of the Member Carrier but only by reason of an act or omission of the consignor, consignee, or owner of the freight will be subject to storage charges after the first 72 hours of free time, from the time freight is at a Member Carrier terminal and a call to consignee is made, according to the follow schedule:

Charges:

    A) $1.35 cwt per day (minimum of $6.00 per day)
    B) $17.00 Minimum Charge per shipment
    C) $47.50 Maximum Charge (first 24 hrs after)
    D) $47.50 Maximum Charge (second 24 hrs after)
    E) $61.00 Maximum Charge (each 24 hrs thereafter)

*Exceptions* – When via, Dayton Freight Lines, Roadrunner Freight Systems and Central Transport Intl.

Charges:

    A) $1.00 cwt per day (minimum of $10.00 per day)
    B) $33.00 Minimum Charge per shipment.

Details

        C) $75.00 Maximum Charge (first 24 hrs after)
        D) Charge (second 24 hrs after)
        E) $150.00 Maximum Charge (each 24 hrs there after)

Rule No. 24  HEATER SERVICE (Vitran Express only): $1.35 cwt., min. charge $16.87 and max charge $53.05 per shipment.

Rule No. 25  CANADIAN (CUSTOMS) PROCESSING FEE (Vitran Express only): Shipments which originate in the United States and are destined to Canada will be assessed an administrative handling fee of $12.50 per shipment.

Rule No. 26  CORRECTED BILL OF LADING FEE (Vitran Express only): Correction fee of $15.00 per request to change billing terms.

Details

## SPECIALIZED/TRUCKLOAD SERVICES, RULES AND ACCESSORIAL CHARGES

Rule No. 1  C.O.D. SHIPMENTS: No additional charges for transportation charges. $200 charg for picking up check for product.

Rule No. 2  DETENTION WITH POWER: Consignor and/or Consignee will be allowed four (4) fr hours. When the equipment is delayed beyond free time, the charges for detentic will be $50 per hour or fraction thereof.

Rule No. 3  DRIVER(S) LOADING/UNLOADING SERVICES: When driver(s) must assist in eithe the Loading and/or Unloading the shipment, the charge shall be $.30 per hundred weight or $.05 per case, whichever is greater with a minimum charge of $100.00 per shipment.

Rule No. 4  EQUIPMENT ORDERED NOT USED: $1.50 per mile from last destination to designated pick up, subject to a minimum charge of $200.

Rule No. 5  MILEAGE BASIS: Current version of PC Miler will be used.

Rule No. 6  MINIMUM CHARGE: Rates published as per mile basis, the minimum charge is $500.00 unless otherwise specified.

Rule No. 7  RECONSIGNMENT, REDELIVERY, DIVERSION; When a shipment is reconsigned, redelivered and/or diverted, an additional charge of $150.00 will be assessed in addition to all other applicable charges.

Rule No. 8  STOP OFFS: Stop off charges for pick ups and/or deliveries, excluding initial pick and final delivery are:
---1st and 2nd stops--------$60.00 per stop
---3rd and 4th stops--------$75.00 per stop
---5th stop and over-------$100.00 per stop

Rule No. 9  BILL OF LADING: For the purpose of this Contract, MEMBER CARRIER agrees to accept a Freedom Logistics Network's bill of lading (continuing the information shown below) as being the governing Straight Bill of Lading. A Freedom Logistics Network's Bill of Lading shall include:

Shipper's Name and Address;

Consignee's Name and Address;

The number of pieces on each shipment;

The description of the product(s) on each shipment;

The weight of each shipment;

The provision of Section 7 terms in the form of the Uniform Straight Bill of Lading (terms provided upon request);

A Bill of Lading date; and

A unique Bill of Lading number.

Rule No. 10  FUEL SURCHARGE: The diesel fuel peg (referred to as the "Starting Fuel Price") fc purposes of determining fuel surcharges/rebates is $1.21 per gallon.

- A fuel cost adjustment will be based on the comparison of the Starting Fuel

Details

Price to the national average retail on-highway diesel fuel price as of the fir Monday of the month. The national average retail on-highway diesel fuel pr is determined by the Energy Information Administration Fuel Hot Line at 2C 586-6966 or the internet at www.eia.doe.gov.

- A fuel cost adjustment will be applied according to the below chart for linehaul and other services that consume fuel whenever the national averag diesel fuel price differs than the starting Fuel Price.

| National Average Diesel Fuel Price | Fuel Surcharge per mile |
|---|---|
| $ .90 | $ .05 |
| $ .95 | $ .04 |
| $1.00 | $ .03 |
| $1.05 | $ .02 |
| $1.10 | $ .01 |
| $1.15 | $ .00 |
| $1.20 | $ .00 |
| $1.25 | $ .01 |
| $1.30 | $ .02 |
| $1.35 | $ .03 |
| $1.40 | $ .04 |
| $1.45 | $ .05 |
| $1.50 | $ .06 |
| $1.55 | $ .07 |
| $1.60 | $ .08 |
| $1.65 | $ .09 |
| $1.70 | $ .10 |
| $1.75 | $ .11 |
| $1.80 | $ .12 |
| $1.85 | $ .13 |
| $1.90 | $ .14 |
| or higher $1.95 or higher | $ .15 |

- The fuel cost adjustment, i.e. $ .01 per mile, is to be shown as a separate charge on the invoice and is not to be included in the linehaul and/or other charges.

TC
A