IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MICROMETL CORP., ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 1:08-CV-0321-LJM-WTL |
| vs. ) | |
| ) | |
| TRANZACT TECHNOLOGIES, INC., ) | |
| ) | |
| Defendant. ) | |

**MICROMETL'S RESPONSE TO TRANZACT'S
MOTION TO DISMISS**

In 2003, Plaintiff, MicroMetl Corp. ("MicroMetl") and Defendant, TranzAct Technologies, Inc. ("TranzAct") entered into a written Shipper Services Agreement ("Contract"). The Contract document consists of eight (8) numbered paragraphs printed on three (3) one-sided pages. (*See* Exhibit A to Complaint) Page 1 of the Contract bears signatures of the parties' representatives; page 3 bears their initials. MicroMetl filed suit against TranzAct for breach of contract. TranzAct has moved to dismiss MicroMetl's Complaint based on a forum selection clause, found not in the contract but on TranzAct's website, providing that Cook or DuPage County, Illinois is the preferred venue for litigating disputes arising from the Contract. The issue presented by TranzAct's Motion is the enforceability of the forum selection clause.

TranzAct's forum selection clause does not appear in the Contract; in fact, the Contract does not even reference, let alone incorporate, the clause. But TranzAct asserts that the three-page printed Contract signed by the parties represents only a "portion of the agreement" between MicroMetl and TranzAct, apparently based on the following language in the Contract:

> The principles for the Freedom Logistics Network that are a part of our service offerings are contained in their entirety in our FREEDOM LOGISTICS NETWORK 21ST CENTURY SHIPPER TRANSPORTATION SERVICES,

> which can be found at a secure link on our web site which we will provide to you before you partner with us. These written principles are what govern both our commitments and we want them readily available at all times so you can access them for your understanding and use. . . . These services are subject to standard principles that are on the secure link on our web site. These rules govern both of our commitments that arise from our signatures implementing your membership in the FREEDOM LOGISTICS NETWORK.

In other words, TranzAct contends, the "rest of the contract" – including the forum selection clause – can be found by going to TranzAct's website (www.tranzact.com), logging into a secure link and reading TranzAct's "principles."

A document is only incorporated by reference into a contract if the parties intended its incorporation. *188 LLC v. Trinity Indust. Inc.* 300 F.3d 730, 736-37 (7th Cir. 2002)(citations omitted)(applying Illinois law). Incorporation of an extrinsic document into the parties' contract requires the parties' intentional, clear and specific reference. *Id.* A contract which purports to incorporate another document by reference must clearly express the parties' intent to incorporate by reference on the face of the contract itself.

When Mark Webber signed the Contract for MicroMetl, TranzAct presented him with a printed 3-page document. (Affidavit of Mark Webber at ¶4 attached hereto as Exhibit 1) It is standard industry practice for freight managers (such as TranzAct) to include all contract terms in a printed document to be signed by the customer. (Ex. 1, ¶7) The Contract signed by Webber is similar to other freight manager contracts which he has seen and appears to be a standard industry document. (Ex. 1, ¶8)

When Webber signed the Contract, it was his understanding that it contained all of the terms and conditions of MicroMetl's agreement with TranzAct. (Ex. 1, ¶9) Webber was never informed that the Contract was only "part of" MicroMetl's agreement with TranzAct, or that additional terms and conditions of the Contract were contained on TranzAct's website. (Ex. 1,

¶10)

Some freight managers, including TranzAct, have websites which the customers can visit to look up shippers and prices. (Ex. 1, ¶11) MicroMetl has used and regularly does use freight manager websites for this purpose on numerous occasions. (Ex. 1, ¶12) It is not standard industry practice for freight managers to put contract terms on their website; in fact, Webber has never seen or heard of this being done in the industry. (Ex. 1, ¶13)

Prior to TranzAct producing them in this lawsuit, Webber had never seen the twenty (20) pages of printed text produced by TranzAct (apparently from its website) and did not know they existed when he signed the Contract. (Ex. 1, ¶14) Webber was not informed that TranzAct's website contained a "forum selection clause" requiring lawsuits to be filed in a particular state or county either prior to or at the time he signed the Contract. (Ex. 1, ¶15) Until TranzAct raised it as a defense to this lawsuit, Webber had no knowledge of the "forum selection clause." (Ex. 1, ¶16)

Forum selection clauses are generally valid and will be enforced unless doing so would be "unreasonable under the circumstances." *M/S Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1, 92 S.Ct. 1907, 1913, 32 L.Ed.2d 513 (1972). Application of Illinois law to the parties' underlying dispute or to the validity of the forum selection clause (under *Abbott Laboratories v. Takeda Pharmaceutical Co.,* 476 F.3d 421, 423 (7th Cir. 2007)) does not change the result, for such clauses are generally enforceable under Illinois law. *IFC Credit Corp. v. Aliano Bros. Gen. Contractors, Inc.*, 437 F.3d 606, 611 (7th Cir. 2006). A district court's ruling on the enforceability of a forum selection clause is reviewed *de novo. Muzumdar v. Wellness Int'l. Network, Ltd.,* 438 F.3d 759, 760 (7th Cir. 2006) (citation omitted).

A forum selection clause is unreasonable if: (1) its incorporation into the contract was the result of fraud, undue influence or unfair bargaining power; (2) the chosen forum is so inconvenient as to deny a party of his day in court; or (3) enforcement would violate a strong public policy. *Bonny v. Society of Lloyd's,* 3 F.3d 156, 160 (7th Cir. 1993) (citations omitted). Here, the manner in which TranzAct attempts to incorporate its website into the Contract raises several questions which make enforcement of the clause unreasonable and unjust: What if a customer cannot access TranzAct's website? Once he does, how does the customer acknowledge the terms and conditions on the website and manifest his acceptance thereof? Can TranzAct unilaterally modify or delete the language on its own website? Assuming it can, what is to prevent it from doing so? And if it does, how do TranzAct's customers get notice of such changes? It is one thing to bury such a provision in fine print on the back of a two-sided document; it is entirely another to omit it from a document completely and invite the customer to go online, then log in to a secure website to try and find it there. TranzAct's forum selection clause is not contained in the Contract; allowing TranzAct to insert it through an extrinsic source would be unjust.

In *Cruthis v. Metro. Life Ins. Co.,* 356 F.3d 816 (7th Cir. 2004), MetLife provided a mandatory ERISA disclosure statement in its summary plan description advising participants of their right to file suit in federal court. MetLife argued that the notice was not a forum selection clause and the court agreed because there was nothing to indicate that the parties intended it to be a substantive provision of the contract:

> . . . there is no evidence that MetLife's statement of ERISA rights was freely negotiated or part of the contract between the parties. . . . there is no evidence that the statement was intended to be part of the contract between the parties.

*Id.* 818-19.

Here, there is no evidence that the parties intended TranzAct's website to become a part of the Contract.  And, while a party is generally presumed to have read and understood a document which he signs, TranzAct's tactic of placing the forum selection clause on a website only accessible through a secure link instead of in the Contract is deceptive and fundamentally unfair.  The Contract does not contain the clause or even mention it, let alone incorporate it as part of the Contract.  There is no evidence that MicroMetl agreed to the clause, read it or was even aware of its existence until TranzAct asserted it in defense of this lawsuit, the legal equivalent of "Gotcha!"  Under *M/S Bremen,* the clause is not enforceable because it is unreasonable and unjust.

In this case, litigating this dispute in Chicago is no more burdensome or inconvenient to MircroMetl than litigating in Indianapolis is to TranzAct.  But there is no evidence that MicroMetl ever consented to sue or be sued in Chicago.  There is no evidence that MicroMetl had notice of the clause prior to signing the Contract.  It is misleading for TranzAct to claim that its forum selection clause is contained in the written agreement signed by MicroMetl; it is nowhere to be found in the Contract.  Even the Contract language about TranzAct's website fails to alert the customer that it contains "terms and conditions" of the Contract, referring to them instead as "principles."  Nor does the Contract expressly incorporate the "principles" on the website into the Contract by reference.

TranzAct makes more factually inaccurate assertions in the "*Declaration of Michael A. Regan."* ("Affidavit")  Paragraph 3 of the Affidavit states that a "true and correct" copy of the Contract signed by the parties is attached to the Affidavit as Exhibit A.  Although the first three (3) pages of Exhibit A coincide with MicroMetl's copy of the Contract, TranzAct includes another twenty (20) pages (apparently printed from its website) which it mischaracterizes as the

parties' "agreement" and which were never signed by MicroMetl. There is no evidence that MicroMetl read, saw or even knew what these pages contained. MicroMetl is under no burden to establish the unreasonableness of a forum selection clause which it never agreed to in the first place.

A forum selection clause printed on a passenger's cruise ship ticket was upheld in *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 595, 111 S.Ct. 1522, 113 L.Ed.2d 622, 630 (1991). TranzAct's reliance on *Carnival* is misplaced because *Carnival* expressly declined to reach the issue of whether the plaintiffs "had sufficient notice of the forum selection clause before entering the contract," and the plaintiffs in *Carnival* conceded that the clause had been adequately communicated to them. The contract in *Carnival* was a printed ticket given to the passenger, not an invitation to visit a website. *Carnival* is in stark contrast to the facts of this case, where there is no evidence that MicroMetl had knowledge of the clause. As TranzAct correctly points out (citing *Carnival*), a forum selection clause will not be enforced if it flunks the test of the fundamental fairness. TranzAct's provision gets an "F" for fairness. Its Motion to Dismiss or Transfer should therefore be denied.

        Respectfully submitted,
        STEWART & IRWIN, P.C.

        /s/ Thomas W. Blessing
        Thomas W. Blessing, #15696-49
        *Attorney for MicroMetl Corp.*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a copy of the foregoing has been served upon the following counsel of record via electronic transmission, this 14th day of April, 2008:

ryanmahoney@shlawfirm.com                tschulte@scopelitis.com

                                                        /s/ Thomas W. Blessing
                                                        Thomas W. Blessing

STEWART & IRWIN, P.C.
Suite 1100
251 East Ohio Street
Indianapolis, IN 46204
(317) 639-5454
Fax: (317)632-1319

si-174923_1

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MICROMETL CORP., ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 1:08-CV-0321-LJM-WTL |
| vs. ) | |
| ) | |
| TRANZACT TECHNOLOGIES, INC., ) | |
| ) | |
| Defendant. ) | |

### AFFIDAVIT OF MARK WEBBER

I, Mark Webber, being first duly sworn upon my oath, state:

1. That I am competent to testify and have firsthand knowledge of all matters set forth herein.

2. I am employed by MicroMetl Corp., the Plaintiff in this litigation ("MicroMetl"), acting in the capacity of General Manager.

3. I signed the document attached as Exhibit A to MicroMetl's Complaint in this lawsuit ("the Contract"). A true and accurate copy of the Contract is attached to this affidavit.

4. When I signed the Contract, TranzAct Technologies, Inc. ("TranzAct") presented me with a printed, three-page document.

5. TranzAct is what is known as a "freight manager."

6. A freight manager acts as a broker for customers in need of shipping services and audits shipping charges for customers.

7. It is standard industry practice for freight managers to include all contract terms in

EXHIBIT 1

a printed document to be signed by the customer.

8.  The Contract which I signed is similar to other freight manager contracts which I have seen and appears to me to be a standard industry document.

9.  When I signed the Contract, it was my understanding that it contained all of the terms and conditions of MicroMetl's agreement with TranzAct.

10.  I was never informed that the document which I signed was only "part of" MicroMetl's agreement with TranzAct, or that additional terms and conditions of the Contract were contained on TranzAct's website.

11.  Some freight managers, including TranzAct, have websites which the customers can visit to look up shippers and prices.

12.  MicroMetl has used and regularly does use freight manager websites for this purpose on numerous occasions.

13.  It is not standard industry practice for freight managers to put contract terms on their website; in fact, I have never seen or heard of this being done in the industry.

14.  Prior to TranzAct producing them in this lawsuit, I had never seen the twenty (20) pages of printed text produced by TranzAct (apparently from its website) and did not know they existed when I signed the Contract.

15.  I was not informed that TranzAct's website contained a "forum selection clause" requiring lawsuits to be filed in a particular state or county either prior to or at the time I signed the Contract.

2

16. Until TranzAct raised it as a defense to this lawsuit, I had no knowledge of the "forum selection clause."

I AFFIRM UNDER PENALTY FOR PERJURY THAT THE FOREGOING REPRESENTATIONS ARE TRUE.

_____
Mark Webber

DATED: 4 / 8 / 2008

Case 1:08-cv-03257 Document 20-2 Filed 04/14/2008 Page 4 of 6

 

# FREEDOM LOGISTICS NETWORK
## 21ST CENTURY SHIPPER
## GLOBAL TRANSPORTATION SERVICES AGREEMENT

The Freedom Logistics Network (FLN) is a unique service division of Tranzact Technologies, Inc. FLN has developed beneficial solutions and supporting technologies for you as a user of transportation/logistic services. We have contracted transportation/logistic services for you based upon a volume of shipments provided by other shippers that is standardized through our FREEDOM 2020 © and 2021 © Rate System.

The principles for the FLN that are a part of our service offerings are contained in their entirety in our FREEDOM LOGISTICS NETWORK 21st CENTURY SHIPPER TRANSPORTATION SERVICES, which can be found at a secure link on our web site which we will provide to you before you partner with us. These written principles are what govern both our commitments and we want them readily available at all times so you can access them for your understanding and use.

In addition to providing you with pricing contained within and discounted off of the FREEDOM 2020 © and 2021 © for use in selecting transportation/logistic services which are available in the FLN under our contracts, Tranzact will facilitate your logistics processes with transportation payment, audit services and management reports. These services are subject to standard principles that are on the secure link on our web site. These rules govern both of our commitments that arise from our signatures implementing your membership in the Freedom Logistics Network.

We have made a sizable investment in the system, which we license for your use. This is important to us because the value of the FLN is the integrity of the system. Please note in the rules that you cannot sell or license our system in any way, including brokering transportation through our system, or using our system, particularly FREEDOM 2020 © and 2021 © or discounts, after you terminate your membership in the FLN.

We will implement your membership in the FLN immediately after receiving your endorsement. As shown in the principles, this commitment will be for a five- (5) year period and will automatically renew for additional two- (2) year periods unless you notify us at least sixty- (60) days prior to expiration of any period.

All contact information, passwords and other information will be given to you as the person authorized by your company to sign this membership commitment (unless you designate another individual).

**MEMBERSHIP ELECTION:**
MEMBER SHIPPER:
MICROMETL
An Indiana Corporation
3035 N. Shadeland Ave., Suite 300
Indianapolis, IN 46226

By: Gerald Holman
Title: Vice President, C.F.O.
Tel. No.: 317/524-5414    Fax No.: 317/543-5986

By: MARK WEBBER
TITLE: V.P., Mfg
TEL.NO: 317-524-5418

FREEDOM LOGISTICS NETWORK
TRANZACT TECHNOLOGIES, INC.,
An Illinois Corporation
360 W. Butterfield Road, Suite 400
Elmhurst, IL 60126

By: Jean H. Regan
Title: President, Tranzact Technologies, Inc.
Tel. No: 630/833-0890    Fax No: 630/833-0346

- 1 -
Tranzact Technologies, Inc. / MicroMetl
Freedom Logistics Network 21st Century Shipper Services Agreement
5/22/03

 

# SCHEDULE I

## *SOFTWARE, RATES, CHARGES, PAYMENT OPTIONS*

1. **FREEDOM 2020©** and **FREEDOM 2021©** rates applicable to you as a Member Shipper can be found on the FLN Internet Website and are available to you effective as of the start date indicated on this contract. The rates are a part of this Agreement. As Member Carriers are added or deleted from the network, you will be notified by the FLN Logistics Group, and the FLN Internet Website will be updated accordingly. The applicable rates will be those that appear on the most current version of the FLN Internet Website.

2. **FLN invoices will be paid** by Tranzact Technologies, Inc. All Shipments moving via the FLN will be invoiced on a weekly basis. All invoices to be paid by Tranzact should be forwarded to:
   TRANZACT TECHNOLOGIES, INC.
   360 W. Butterfield Road, Suite 400
   Elmhurst, IL 60126

3. **FLN Services** - FLN will provide the following services as a part of your FLN membership:
   a. Audits for overcharges and duplicate payments will be included in the payments for all designated shipments transported by a Member Carrier or non-member carrier.
   b. FLN will supply the following Monthly Management Reports:
      1. Carrier Summary Corporate
      2. Carrier Summary By Division
      3. Lane Summary
   c. Invoices from Parcel carriers will be paid at the manifest level only
   d. StarRate (Software) web site for rating of Freedom shipments
   e. StarLite Reporting System (Software) - License for Member Shipper use on-site: Prices quoted upon request
   f. StarRate Software Integration with Internal Systems (Software) - License for Member Shipper use in house: Prices quoted upon request
   g. Inbound Management Reporting System Software: Prices quoted upon request
   h. On-Site Logistics Support: Prices quoted upon request
   i. Flat file of **FREEDOM 2020 © and 2021 ©** Less Than Truckload rates – prices quoted upon request
   j. Custom Software design – prices quoted upon request

4. **Tranzact Technologies will conduct a post audit of freight charges** paid to carriers for shipments made up to 120-150 days prior to the effective date of this agreement. The exact time frame for including bills in the post audit depends upon the length of time needed to provide Tranzact the actual freight bills themselves as well as the pertinent rates, discounts and charges used in the post audit itself. In return for conducting the post audit, Tranzact will retain 40% of all monies recovered from overcharges related to the incorrect application of rates, discounts, rules or charges including duplicate billings

5. **Initial Investment\*** ............................................. $ 1,500
\*Includes start-up expenses to bring Member Shipper on-line to FLN

6. **Monthly Investment\*\*** ............................................. $ 1,000
\*\*The monthly investment for participation in the FLN:

7. All Member Shipper charges will be processed by Tranzact Technologies, Inc. weekly. The procedure will be as follows:
a. Weekly pay periods end on a scheduled day each week.
b. All Freight invoices will be received on a daily basis.
c. Freight invoices will be entered into the system within a reasonable period after receipt.
d. The day prior to receipt of funds due, Member Shipper will be notified via facsimile transmission or e-mail of total dollars due to satisfy payment obligations for that week.
e. Member Shipper will fund Tranzact Technologies (ACH or wire transfer) for weekly payment obligation no later than 5 p.m. on the next business day. If this payment obligation is not met by the next business day at 5 p.m., Member Shipper will be assessed a $200 late payment fee to be included in the next week's payment.

| PAYMENT OPTIONS | RECEIVING FUNDING INFORMATION |
|---|---|
| Client or Tranzact initiated ACH: | Receive weekly by e-mail: |
| No Charge | No Charge |
| All other forms of payment: | Receive weekly by fax: |
| $50.00 per month administration fee | $25.00 per month administration fee |

f. If Member Shipper chooses not to fund via wire transfer or ACH, Member Shipper must provide Tranzact Technologies with the equivalent of four- (4) weeks' funds based upon an average of the prior 4 weeks experience or, if there is an insufficient period, then based upon an estimate by Tranzact Technologies.
g. Payment to the Member Carriers will be released to each Member Carrier via check once collected funds are received.
h. Member Shipper will be billed monthly for membership fees (manual, wire transfer or ACH).

8. **Amendments Due to Volume**
If the average number of bills paid per month over a three-month period exceeds 1100, the monthly investment may be adjusted. The adjusted investment will not exceed $1 per bill.

This Schedule I issued on July 31, 2003
and becomes effective Aug. 18, 2003

MEMBER SHIPPER:
MICROMETL
An Indiana Corporation

Initials: [signature]
NAME: Gerald Holman
TITLE: CFO

MARK WEBBER
V.P., Mfg

FREEDOM LOGISTICS NETWORK
TRANZACT TECHNOLOGIES, INC.
An Illinois Corporation

Initials: [signature]
Jean H. Regin
President