IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MICROMETL CORP., <br><br> Plaintiff, <br><br> vs. <br><br> TRANZACT TECHNOLOGIES, INC, <br><br> Defendant. | No.:   08-CV-3257 <br><br> The Honorable Judge Ruben Castillo |

**ANSWER & AFFIRMATIVE DEFENSES**

NOW COMES the Defendant, TRANZACT TECHNOLOGIES, INC. (hereinafter "Tranzact"), by and through its attorneys, SULLIVAN HINCKS & CONWAY, and for its Answer to Plaintiff's Complaint in the above-captioned matter, states as follows:

1.     In 2003, Micrometl and Tranzact entered into a written shipper services agreement ("contract").  A true and accurate copy of the contract is attached hereto and incorporated by reference herein as Exhibit A.

**ANSWER:**   **Defendant admits only that it entered into a contractual relationship with Plaintiff in 2003 governed by the "Freedom Logistics Network 21st Century Shipper Global Transportation Service Agreement" and its incorporated provisions (hereinafter collectively referred to as "the Agreement).  Defendant denies that Plaintiff has attached a "true and accurate copy" of said Agreement as Exhibit A to Plaintiff's Complaint, and submits that Exhibit A only contains a portion of the Agreement.**

2. Pursuant to the contract, Tranzact agreed to manage freight shipping for Micrometl and to audit Micrometl's shipping expenses.

**ANSWER: Defendant submits that the Agreement speaks for itself with regard to the responsibilities of each party to the Agreement, and further denies that Plaintiff has properly stated such responsibilities in Paragraph 2 of Plaintiff's Complaint.**

3. Pursuant to Micrometl's agreement with one of its customers, Carrier Corporation ("Carrier"), all shipping expenses associated with products sold by Mircrometl to Carrier were billed to and paid by Carrier.

**ANSWER: Defendant has insufficient knowledge to either admit or deny the allegations contained in Paragraph 3 of Plaintiff's Complaint, and therefore demands strict proof thereof.**

4. Shipping expenses associated with Micrometl's sales to other customers were billed to and paid by Micrometl.

**ANSWER: Defendant has insufficient knowledge to either admit or deny the allegations contained in Paragraph 4 of Plaintiff's Complaint, and therefore demands strict proof thereof.**

5. Tranzact had actual or constructive knowledge of these practices.

**ANSWER: Defendant denies the allegations contained in Paragraph 5 of Plaintiff's Complaint.**

6. In November 2005, Tranzact unilaterally and without prior notice began billing Micrometl for shipping expenses associated with products sold by Micrometl to Carrier.

**ANSWER: Defendant admits that it began billing Plaintiff for shipping expenses associated with products sold by Micrometl to Carrier in or about November 2005, but**

denies that said billing was done "unilaterally and without prior notice." **Affirmatively, Defendant submits that said billing was done pursuant to Plaintiff's explicit instructions and therefore denies the remaining allegations of Paragraph 7 of Plaintiff's Complaint.**

7.  Tranzact has also overbilled Micrometl for Yellow Freight charges in an undetermined amount.

**ANSWER: Defendant denies the allegations contained in Paragraph 7 of Plaintiff's Complaint.**

8.  Tranzact has overbilled Micrometl in excess of $100,000.

**ANSWER: Defendant denies the allegations contained in Paragraph 8 of Plaintiff's Complaint.**

9.  Said overbillings are inconsistent with the parties' prior course of dealing.

**ANSWER: Defendant denies the allegations contained in Paragraph 9 of Plaintiff's Complaint.**

10. Tranzact breached the contract without excuse or justification and Mircrometl has sustained damages as a proximate result of said breach.

**ANSWER: Defendant denies the allegations contained in Paragraph 10 of Plaintiff's Complaint.**

11. In December 2006, Micrometl notified Tranzact, in writing, of the overbillings and requested that they be corrected. However, Tranzact has failed and refused to correct the overbillings.

**ANSWER: Defendant admits that Micrometl contacted Tranzact, in writing, in or about December 2006 regarding a perceived billing discrepancy. Defendant denies the remaining allegations of Paragraph 11 of Plaintiff's Complaint.**

12.     Micrometl has made written demand upon Tranzact for payment, but Tranzact refuses to pay.

**ANSWER:   Defendant admits that Micrometl has contacted Tranzact, in writing, regarding a perceived billing discrepancy.  Defendant denies the remaining allegations of Paragraph 12 of Plaintiff's Complaint.**

WHEREFORE, Defendant, TRANZACT TECHNOLOGIES, INC., respectfully asks this Court to enter judgment in its favor and against Plaintiff, MICROMETL CORP., and for such other relief as this Court deems appropriate.

## FIRST AFFIRMATIVE DEFENSE
### (MICROMETL'S DUTY TO INDEMNIFY & HOLD HARMLESS)

1.      The relationship between Plaintiff and Defendant was governed by the Freedom Logistics Network 21st Century Shipper Global Transportation Agreement (hereinafter, "the Agreement").  A true and correct copy of the Agreement is attached hereto as Exhibit "A."

2.      Pursuant to the terms of the Agreement, one of Defendant's duties under the Agreement was to serve as a freight payment agent for Plaintiff.

3.      In doing so, Defendant was required to direct the freight bills it received for movement of Plaintiff's freight pursuant to the express terms contained on the bills themselves.

4.      For the vast majority of Plaintiff's customers, freight bills relating to the movement of Plaintiff's freight were designated "freight prepaid," meaning that Plaintiff was responsible for paying the freight charges associated with moving the freight from funds provided to Defendant by Plaintiff for such payments.

5.      Plaintiff's customer, Carrier of Mexico, represented an exception to the vast majority of Plaintiff's customers in that any freight moved for Plaintiff to Carrier was supposed

to be designated "freight collect" by Plaintiff, meaning that Carrier of Mexico would pay the freight charges.

6. Nonetheless, throughout the course of its relationship with Defendant, Plaintiff repeatedly marked its freight bills-of-lading to its customer, Carrier, as "freight prepaid," indicating that Plaintiff would assume the charges associated with moving the freight and that Defendant was to pay such bills on behalf of Plaintiff.

7. Plaintiff later admitted that such freight charges were supposed to be charged to Carrier of Mexico, not Plaintiff.

8. In order to direct such freight charges to Carrier of Mexico, Plaintiff was obligated to mark each bill-of-lading as "freight collect," instead of "freight prepaid."

9. Nonetheless, Plaintiff received the freight bills erroneously marked "freight prepaid," and forwarded said bills to Defendant. In addition, Plaintiff stamped said bills, indicating to Defendant that the bills should be paid from Plaintiff's funds in accordance with Plaintiff's standing instructions to pay all stamped freight bills.

10. Accordingly, with regard to the bills complained-of in Plaintiff's Complaint, Defendant simply followed Plaintiff's instructions that the freight charges were "freight prepaid" and were stamped by Plaintiff for payment. In accordance with Plaintiff's instructions, Defendant thus paid the bills and billed Plaintiff for said charges.

11. Defendant was therefore justified in securing funds from Plaintiff to pay said bills by Plaintiff's own instructions to do so.

12. Under the Agreement, Plaintiff expressly agreed to "indemnify and save [Tranzact] harmless from and against all losses, claims or damages, penalties, costs and expenses caused by fault or negligence of [Micrometl]." (Ex. A, Art. XVII).

13. Specifically, with regard to freight payment services, Plaintiff expressly agreed to "indemnify and save Tranzact harmless from and against all losses, claims, damages, penalties, costs and expenses caused by fault or negligence of [Micrometl], and from any and all claims of whatever nature by whomever made against Tranzact arising out of Tranzact's action based or in reliance upon [Micrometl] information or instructions." (Ex. A, "Freight Payment Terms and Conditions," ¶ 11).

14. By the very terms of the Agreement, Plaintiff cannot now seek compensation from Defendant for Plaintiff's own mistakes in providing faulty information to Defendant.

WHEREFORE, Defendant, TRANZACT TECHNOLOGIES, INC., respectfully asks this Court to enter judgment in its favor and against Plaintiff, MICROMETL CORP., and for such other relief as this Court deems appropriate.

## SECOND AFFIRMATIVE DEFENSE
### (ACCORD AND SATISFACTION – CARRIER BILLS)

1-11. As Paragraphs 1-11 of its Second Affirmative Defense, Defendant hereby adopts Paragraphs 1-11 of its First Affirmative Defense as though stated fully herein.

12. Upon discovery of its mistake, upon information and belief, Plaintiff sought reimbursement for the complained-of freight charges directly from Carrier of Mexico, pursuant to the agreement Plaintiff had with Carrier of Mexico.

13. Plaintiff and Carrier of Mexico ultimately agreed to a full and final compromise and settlement of the claims associated with said freight charges.

14. Plaintiff's claims for the freight charges associated with the complained-of bills have therefore been satisfied, and Plaintiff is estopped from seeking additional compensation for said claims.

WHEREFORE, Defendant, TRANZACT TECHNOLOGIES, INC., respectfully asks this Court to enter judgment in its favor and against Plaintiff, MICROMETL CORP., and for such other relief as this Court deems appropriate.

### THIRD AFFIRMATIVE DEFENSE
### (SETOFF – CARRIER BILLS)

1-13. As Paragraphs 1-13 of its Third Affirmative Defense, Defendant hereby adopts Paragraphs 1-13 of its Second Affirmative Defense as though stated fully herein.

14. In the event that Defendant is found liable to Plaintiff in any amount with regard to the bills containing freight charges associated with Carrier of Mexico (liability that Defendant strictly denies), such amount should be set-off in an amount equal to the amount received by Plaintiff from Carrier of Mexico as compensation for said freight charges pursuant to the compromise and settlement entered into by Plaintiff and Carrier of Mexico.

WHEREFORE, Defendant, TRANZACT TECHNOLOGIES, INC., alternatively asks this Court to set off any judgment in Plaintiff's favor an amount equal to the amount received by Plaintiff from Carrier of Mexico as compensation for said freight charges pursuant to the compromise and settlement entered into by Plaintiff and Carrier of Mexico, and for such other relief as this Court deems appropriate.

### FOURTH AFFIRMATIVE DEFENSE
### (ACCORD AND SATISFACTION – YELLOW FREIGHT BILLS)

1. Defendant never overbilled Plaintiff for freight charges associated with Yellow Freight ("Yellow").

2. Instead, Defendant negotiated certain discounted freight rates from Yellow on behalf of and for the benefit of Plaintiff through Defendant's "Freedom Logistics Network" (hereinafter "FLN").

3.  However, Plaintiff did not use Yellow enough, and Yellow cancelled the FLN rates due to a lack of traffic being tendered by Plaintiff.

4.  After Yellow had cancelled said rates, Defendant notified Plaintiff of the cancellation of the discounted freight rates that Defendant had negotiated for Plaintiff's benefit.

5.  Plaintiff then began using Yellow to ship its freight despite being previously notified of the cancelled rates that Defendant had negotiated for Plaintiff's benefit.

6.  Having already cancelled the rates negotiated by Defendant, Yellow unilaterally charged Plaintiff under its standard "courtesy discount" rates -- rates that were much higher than the cancelled rates that had been previously offered through the FLN.

7.  After Yellow performed the services contracted by Plaintiff, Yellow sent freight bills to FLN following the contracted procedures for a freight bill payment by FLN; and, subsequently, Plaintiff complained the rates were higher than previously.

8.  Nonetheless, although not contractually required to do so, Defendant negotiated with Yellow and was thereafter able to restore the previously-cancelled FLN rates retroactively and secure an accommodation payment to Plaintiff in the amount of $91,000.00, representing the difference between the "courtesy discount" rates and the FLN rates.

9.  Plaintiff''s claim for "overbilling" is undermined by the fact that any perceived "overbilling' with regard to Yellow Freight charges has been satisfied by the accommodation payment negotiated by Defendant and tendered to Plaintiff as a refund.

10. Accordingly, due to Defendant's intervention, Plaintiff was never actually damaged by its own mistake in using Yellow after Yellow had cancelled the FLN rates, and therefore cannot recover any damages due to perceived "overbilling."

WHEREFORE, Defendant, TRANZACT TECHNOLOGIES, INC., respectfully asks this Court to enter judgment in its favor and against Plaintiff, MICROMETL CORP., and for such other relief as this Court deems appropriate.

### FIFTH AFFIRMATIVE DEFENSE
### (STATUTE OF LIMITATIONS)

1. Pursuant to the express terms of the parties' Agreement, any and all disputes regarding overcharges on any billing for transportation services were required to be submitted by Plaintiff to Defendant within one hundred (100) days from the original payment of the transportation charges. (Ex. A, Art. II, ¶ E(i)).

2. To the extent that any of the unidentified "overbillings" alleged in Plaintiff's Complaint were not disputed by Plaintiff to Defendant within 100 days of the original payment of the associated freight charges, said "overbillings" are barred by the statute of limitations mutually agreed-upon by the parties.

WHEREFORE, Defendant, TRANZACT TECHNOLOGIES, INC., respectfully asks this Court to enter judgment in its favor and against Plaintiff, MICROMETL CORP., with regard to any and all alleged "overbillings" that were not disputed by Plaintiff within 100 days of the original payment of the associated freight charges, and for such other relief as this Court deems appropriate.

### SIXTH AFFIRMATIVE DEFENSE
### (LIMITATION OF LIABILITY)

1. Pursuant to the express terms of the parties' Agreement, Defendant's liability is limited only to actual money damages equal to "the compensation received by [Defendant] for services for the three-month period prior to the date on which the act giving rise to the liability is discovered. (Ex. A, Art. VIII, ¶¶ A-E).

2. Under the Agreement, the said "compensation" shall be equal to "the difference between the amount paid to [Defendant] by [Micrometl] and the amount paid by [Defendant] to the Member Carriers for the transportation of [Micrometl's] shipments." (Ex. A, Art. VIII, ¶ E).

3. By its own contention, Plaintiff discovered the alleged billing discrepancy detailed in its Complaint no later than December 2006.

4. Accordingly, by the express terms of the parties' Agreement, Defendant's liability in this matter, if any, must be limited to the difference between the amount paid to Defendant by Plaintiff and the amount paid by Defendant to Plaintiff's freight carriers, with respect to this particular account, for the months of October through December of 2006.

WHEREFORE, Defendant, TRANZACT TECHNOLOGIES, INC., alternatively asks this Court to limit any judgment in this matter against Defendant to the amount of Defendant's "compensation," as that term is defined in the Agreeement between the parties, for the three-month period encompassing October through December of 2006, and for such other relief as this Court deems appropriate.

Respectfully submitted,

TRANZACT TECHNOLOGIES, INC.

By: __/s/ Daniel C. Sullivan_____
One of Its Attorneys

Daniel C. Sullivan
(ARDC # 2767406)
Ryan A. Mahoney
(ARDC # 6275418)
SULLIVAN HINCKS & CONWAY
120 West 22nd Street, Suite 100
Oak Brook, Illinois 60523
Tel:   (630) 573-5021
Fax:   (630) 573-5130

**CERTIFICATE OF SERVICE**

  I hereby certify that on the 20th day of June, 2008, a copy of the foregoing was filed electronically. The following parties may access this filing through the Court's ECF system:

Thomas E. Schulte
tschulte@scopelitis.com

Douglas Robert Brown
dbrown@silegal.com

Thomas W. Blessing
tblessing@silegal.com, dedmondson@silegal.com

Jill C. Taylor
jctaylor@uhlaw.com


          /s/ Ryan A. Mahoney
          Ryan A. Mahoney


SULLIVAN, HICKS & CONWAY
120 West 22nd Street, Ste. 100
Oak Brook, IL 60523
(630) 573-5021 ph
(630) 573-5130 fax