IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MICROMETL CORP., ) | |
| ) | |
| Plaintiff/Counter-Defendant, ) | |
| ) | Case No.  08-CV-3257 |
| vs. ) | |
| ) | The Honorable Judge Ruben Castillo |
| TRANZACT TECHNOLOGIES, INC., ) | |
| ) | |
| Defendant/Counter-Plaintiff. ) | |

## REPLY

Counter-Defendant, MicroMetl Corp. ("MicroMetl"), by counsel, and for its Reply to Defendant's Counterclaim states:

1.  On or about July 31, 2003, Tranzact and Micrometl entered into a contract known as the Freedom Logistics Network 21st Century Shipper Global Transportation Services Agreement (hereinafter, "The Agreement"). A true and correct copy of the Agreement, including all of its accompanying Schedules, is attached hereto as "Exhibit A" and expressly incorporated herein.

    **Response:**   Admit.

2.  The effective date of the Agreement was August 18, 2003. (Ex. A, p. 3).

    **Response:**   Admit.

3.  The Agreement governed Micrometl's membership in Tranzact's Freedom Logistics Network (hereinafter "FLN") and contains all of the obligations of both parties

regarding their relationship.

**Response:** Admit the terms of the agreement but deny each and every remaining allegation.

4. Pursuant to the Agreement, Tranzact agreed to provide Micrometl with access to the FLN, a defined marketplace created by Tranzact consisting of motor carriers that Tranzact has prequalified to standardize shipping terms (aka, "the Member Carriers"). Micrometl could then use this network to arrange for transportation of its various commodities.

**Response:** Admit the terms of the agreement but deny each and every remaining allegation.

5. Under the Agreement, Tranzact also agreed to provide certain freight bill processing, auditing, freight bill payment, preparation of reports, and related services to Micrometl.

**Response:** Admit the terms of the agreement but deny each and every remaining allegation.

6. Pursuant to the Agreement, Tranzact accrued fees for the services it provided Micrometl (known as "Monthly Management Fees") and would invoice Micrometl for such fees. Under the Agreement, Micrometl was obligated to pay such invoices in a timely manner.

**Response:** Admit the terms of the agreement but deny each and every remaining allegation.

7.   Also, under the Agreement, Tranzact accrued a profit margin based on the gross transportation revenue each customer generated under the FLN.

**Response:**   Admit the terms of the agreement but deny each and every remaining allegation.

8.   The fifth paragraph on the first page of the Agreement lays out the term of the Agreement and the procedures for termination of the Agreement. It reads as follows:

> We will implement your membership in the FLN immediately and receiving your endorsement. As shown in the principles, this commitment will be for a five-(5_ year period and will automatically renew for additional two-(2) year periods unless you notify us at least sixty-(60) days prior to expiration of any period. (Ex.A)

**Response:**   Admit the terms of the agreement but deny each and every remaining allegation.

9.   By these clear terms, the Agreement was not scheduled to expire until August 18, 2008 — five years after the effective date contained therein.

**Response:**   Admit the terms of the agreement but deny each and every remaining allegation.

10.   Further, Micrometl, as the "Member Shipper" under the Agreement, could only terminate the Agreement by providing at least 60-day written notice prior to the end of the initial term. Accordingly, the earliest Micrometl could terminate the Contract was August 18, 2008 (i.e., the end of the initial term), upon providing written notice no later than June 19, 2008.

**Response:**   Admit the terms of the agreement but deny each and every remaining

allegation.

11. Nonetheless, on November 18, 2007, Micrometl unilaterally announced that it would be prematurely terminating the Agreement, and effectively stopped using the FLN on that date.

**Response:** Admit terminating the agreement because of TranzAct's breach thereof. Deny each and every remaining allegation.

12. Thereafter, Micrometl only paid its remaining Monthly Management Fees through December 31, 2007.

**Response:** Deny.

13. As of November 18, 2007, Micrometl had in fact terminated its relationship with TRANZACT without cause and thus breached the terms of the Agreement.

**Response:** Deny.

14. Due to Micrometl's unjustified breach of the Agreement, Tranzact lost and continues to lose the margin it normally would receive off of the gross transportation revenue generated by Micrometl under the Agreement for a period of nine (9) months (i.e., November 18, 2007 through August 18, 2008).

**Response:** Deny.

15. Further, Tranzact lost and will continue to lose the Monthly Management Fees it

4

would have earned under the Agreement for a period of seven-and-one-half (7 ½) months (i.e., January 1, 2008 through August 18, 2008).

**Response:**   Deny.

16.    At the time of Micrometl's unjustified breach, Tranzact was realizing an average of $4,751.87 per month in margin revenues based on the gross transportation revenue generated by Micrometl under the RN.

**Response:**   Deny.

17.    Further, at the time of Micrometl unjustified breach, Tranzact's Monthly Management Fee totaled $1,000.00 per month.

**Response:**   Deny.

18.    Accordingly, as a direct and proximate result of Micrometl' s unjustified breach of the Agreement, Tranzact lost and will continue to lose at least $42,766.83 in margin profits and $7,500.00 in Monthly Management Fees, for a total of $50,266.83 in losses.

**Response:**   Deny.

19.    Under the terms of the Agreement, Micrometl is required to indemnify Tranzact for all losses, claims or damages, penalties, costs and expenses caused by fault of Micrometl, including Tranzact's reasonable attorneys' fees and costs associated with bringing this action.

**Response:**   Deny.

### Affirmative Defenses

### Breach

TranzAct cannot recover on its Counterclaim for the reason that it committed the first breach of the parties' agreement.

### Estoppel

TranzAct is estopped from claiming breach by virtue of its own failure to perform under the agreement.

### Waiver

TranzAct has waived any claim for breach by not asserting it in a timely fashion.

### Failure to Mitigate

TranzAct has failed unreasonably to mitigate its alleged damages.

WHEREFORE, Counter-Defendant, MicroMetl Corp., by counsel, respectfully requests judgment in its favor and against TranzAct on the Counterclaim, that TranzAct take nothing by way of its Counterclaim, for costs of this action and all other relief reasonable in the premises.

Respectfully submitted,

/s/ Thomas W. Blessing
Thomas W. Blessing, Indiana Bar #15696-49
admitted *Pro Hac Vice*
Jill C. Taylor, #6292018
*Attorneys for MicroMetl Corp.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 10th day of July, 2008, a copy of the foregoing was filed electronically. The following parties may access this filing through the Court's ECF system:

ryanmahoney@shlawfirm.com

tschulte@scopelitis.com

jctaylor@uhlaw.com

dansullivan@shlawfirm.com

mattbarrette@shlawfirm.com

/s/ Thomas W. Blessing
Thomas W. Blessing

STEWART & IRWIN, P.C.
Suite 1100
251 East Ohio Street
Indianapolis, IN 46204
(317) 639-5454
Fax: (317)632-1319

UNGARETTI & HARRIS LLP
3500 Three First National Plaza
Chicago, Illinois 60602
Telephone: (312) 977-4414
Fax: (312) 977-4405

SI-185039_1